TEXAS & NEW ORLEANS RAILROAD COMPANY v. FRED OTIS BROUILLETTE, BY NEXT FRIEND.

Decided June 21, 1910.

**1.—Personal Injuries—Public Thoroughfare—Backing Train.**

In a suit by a minor between two and three years of age for the loss of a leg caused by being run over by a railroad train which was being backed over a public thoroughfare near a railroad station, pleading and evidence considered and held sufficient to support a verdict finding in effect, that the brakeman and other employees of the defendant company operating the train did not exercise ordinary care to see that the track was clear before backing the train, and that had such care been exercised the plaintiff would have been discovered upon the track in time to have averted the injury.

**2.—Same—Infant—No Contributory Negligence.**

It may be held as matter of law that a child two years and seven months old was not guilty of negligence or contributory negligence in being upon a railroad track under the circumstances shown in this case.

**3.—Railroad Company—Duty of Lookout.**

The operatives of a railway train owe the general duty of lookout not only to those who are of right upon the track but to trespassers as well. If in this the operatives are derelict, a recovery will be denied to a trespasser not because the railway company is acquitted of wrong but because the trespasser's own want of care intervened.

**4.—Same—Injury to Infant—Charge.**

In the case of an infant run over and injured by a railroad train, charge of the court as to the duty of the operatives of the train, considered and approved, and a charge requested by the defendant on the doctrine of discovered peril disapproved because it ignored the duty of the railroad operatives to keep a lookout.

**5.—Personal Injuries—Future Suffering.**

Pleading and evidence considered and held to warrant a charge upon future physical suffering in an action for personal injuries.

**6.—Same—Infant—Excessive Damages.**

A verdict for $30,000 damages for the loss of a foot by an infant between two and three years of age, held excessive under the evidence in this case, and a remittitur of $10,000 required.

Appeal from the District Court of Orange County. Tried below before Hon. W. B. Powell.

*Baker, Botts, Parker & Garwood* and *Parker, Hefner & Orgain,* for appellant.—The testimony adduced upon the trial of this case was insufficient to support the verdict and judgment in favor of the plaintiff below, in that it wholly failed to show that the injury complained of resulted from the negligence of the defendant in any particular as alleged in plaintiff's petition, but on the contrary all the evidence adduced, or the great preponderance thereof, showed plaintiff's injury to have been the result of an unavoidable accident, and not proximately caused by negligence upon the part of the defendant in any particular. Texas & N. O. R. Co. v. Brouilette, 117 S. W., 1014; International & G. N. R. Co. v. Vallejo, 113 S. W., 4; Galveston, H. & S. A. Ry. Co. v. Kieff, 94 Texas, 334; Douglass v. Central Texas & N. W. Ry. Co., 90 Texas, 125; Flores v. Atchison, T. & S. F. Ry. Co., 66 S. W., 709.

Under the facts in this case Fred Otis Brouillette was a trespasser upon defendant's track, and the defendant owed him no affirmative duty to discover him in his position of danger, and unless discovered by the train operators in time to have prevented his injury by the use of all means at hand consistent with the safety of the train, there could be no recovery. Houston & T. C. Ry. Co. v. Ramsey, 97 S. W., 1067; San Antonio & A. P. Ry. Co. v. McMillan, 100 Texas, 562; Thomas v. Chicago, M. & St. P. Ry. Co., 61 N. W., 969; Williamson v. Gulf, C. & S. F. Ry. Co., 88 S. W., 280; Galveston, H. & S. A. Ry. Co. v. Kieff, 94 Texas, 334; Douglass v. Central Texas & N. W. Ry. Co., 90 Texas, 125; Flores v. Atchison, T. & S. F. Ry. Co., 66 S. W., 709.

*Holland & Holland, Adams & Huggins* and *V. H. Stark,* for appellee.—The testimony adduced upon the trial of this case fairly shows

that the injury complained of, resulted from the negligence of defendant as alleged in plaintiff's petition, and was proximately caused by such negligence and is sufficient to support the verdict of the jury and judgment of the trial court in plaintiff's favor.   Missouri, K. & T. Ry. Co. v. Hammer, 78 S. W., 708; Missouri, K. & T. Ry. Co. v. Nesbit, 97 S. W., 826; Texas & N. O. Ry. Co. v. Brouillette, 117 S. W., 1014; Houston & T. C. Ry. Co. v. Simpkins, 54 Texas, 516; Galveston City Ry. Co. v. Hewitt, 67 Texas, 479; Texas & P. Ry. Co. v. Watkins, 88 Texas, 20; St. Louis & S. W. Ry. Co. v. Shifflett, 56 S. W., 698; Texas & P. Ry. Co. v. O'Donnell, 58 Texas, 42; Houston & T. C. Ry. Co. v. Simpson, 60 Texas, 103; International & G. N. R. Co. v. Ormond, 64 Texas, 485; International & G. N. R. Co. v. McDonald, 75 Texas, 45; Artusy v. Missouri Pac. Ry. Co., 73 Texas, 192; San Antonio & A. P. Ry. Co. v. Vaughn, 5 Texas Civ. App., 195; Washington v. Missouri, K. & T. Ry. Co., 90 Texas, 314; McCray v. Galveston, H. & S. A. Ry. Co., 89 Texas, 168; Atchison, T. & S. F. Ry. Co. v. Mills, 116 S. W., 855.

The future physical suffering of the plaintiff was an issue to be submitted to the jury in this case because the evidence justified its submission and the nature of the injury received required it.   Missouri, K. & T. Ry. Co. v. Nesbit, 88 S. W., 892; Mexican Central Ry. Co. v. Mitten, 13 Texas Civ. App., 633; Washington & G. Ry. Co. v. Tobriner, Admr. of Harmon, 147 U. S., 571; Denver & R. G. Ry. Co. v. Roller, 49 L. R. A., 79.

McMEANS, ASSOCIATE JUSTICE.—Appellee, Fred Otis Brouillette, a minor, by E. G. Brouillette, next friend, sued the appellant, Texas & New Orleans Railroad Company, for damages for personal injuries received by him through the alleged negligence of appellant, and upon a trial before a jury recovered a judgment for $30,000, from which the railroad company has appealed.   The evidence in the record justifies the following conclusions of fact:

Fred Otis Brouillette, two years and seven months old, lived with his parents in the City Hotel, situated on Green Avenue, in the city of Orange, a short distance north of appellant's railroad and depot. On November 16, 1906, about noon, appellant's passenger train, headed west, came into Orange, and the engine passing the depot, stopped at a water tank just west of the depot and of Green Avenue, where the engine took water, and while so doing the passengers alighted from and entered the cars.   The taking of water consumed some four or five minutes.   After taking water the train was backed until the baggage car came opposite the baggage room, and this was done in order that the baggage to be placed on the train could be loaded into the baggage car from in front of or near the baggage room.   In so backing the train the appellee was run over by the rear coach and injured.

When the train came into Orange, E. G. Brouillette, the father of Fred Otis, was in the City Hotel, and immediately upon the arrival of the train started to the depot, which is situated south of the railway track, and on the opposite side of the track from the hotel, leaving Fred Otis, with an older brother, inside the hotel, sitting   at a

table eating his dinner. The train having stopped across and blocked Green Avenue, and the cars of the train being vestibuled so that he could not pass between them, Brouillette gained the depot by walking eastwardly by the side of the standing train and crossing the track at the end of the rear car. The presumption is that the child attempted to follow his father to the depot. He had reached and gotten upon the track at the rear of the train at the time or just before the train began to back. He was not seen by any of the train operatives before he was run over.

It was shown that Green Avenue was a public street and a much traveled thoroughfare in the city of Orange, and that travelers upon it at such times as it was blocked by appellant's trains were compelled to wait until the trains were moved from off the crossing or else to cross the track west of the water tank or east of and to the rear of the train.

Before the train began to back, after taking water, the conductor gave the signal to the fireman to back, and the fireman communicated the signal to the engineer, who, in obedience thereto, began to back the train, after looking toward the rear of the train and seeing that the track was clear on his side. The facts thus far stated are undisputed.

The controverted issues of fact were, first, whether the brakeman went to the rear of the train before it began backing to see if the track was clear; and, second, whether, if he did so, the child was on the track at such a distance from the rear end of the last car that the brakeman, in the exercise of ordinary care under the circumstances, would have discovered his presence in time to have prevented the injury to him. On these issues the brakeman testified that when he received a signal from the conductor that the train was to be backed he immediately went to the rear of the last coach, looked to see if the track was clear, and, seeing no one upon it, swung himself upon the platform steps and gave to the conductor the signal to back, which signal the conductor repeated to the fireman. On this evidence and that of the conductor and of the witnesses, Sprouse and Ward, which corroborates it, appellant contends that if the child was upon the track he was so close to the car that the brakeman could not have discovered him by the exercise of ordinary care, but that to have ascertained his presence would have had to stop and look under the car, a precaution which the exercise of ordinary care did not require.

On the other hand, the witness Labit, a passenger upon the train, testified that when the train started to back he, the witness, got upon the hind steps of the second car from the rear and that after the train had backed about half a car length he heard a child cry; that he jumped to the ground and looked under the car and saw the child and that the child was on the track about half way between the rear and front trucks of the hind coach; that the brakeman was standing between the colored waiting room and the baggage room door, on the platform of the old depot, about eight or ten feet from the train at its nearest point, and about a coach and a half's length from the rear end; that when witness first looked at him the brakeman was not doing anything but standing there; that the train was then back-

ing; that he attracted the brakeman's attention and he, the brakeman, motioned to the engineer or fireman and stopped the train. The witness McKay testified that he was at the depot when the child was injured and that the only brakeman he saw was standing on the platform near the cistern between the depot and express office. The testimony is undisputed that there was but one brakeman on the train.

Upon the second disputed point it was shown by the testimony of the brakeman that when he reached the rear of the train he looked to see if the track was clear and saw no one upon it; that the train did not start backing until he got on the end; that as to whether there was anything to keep him from observing the child, that if he had gotten down and looked under the coach he probably might have seen him; that he could not say where the child was at the time he gave the signal to back up; that he looked back at the train and the child was not there that he could see; that he did not go back of the train or behind it; that he could see around the corner of the car and that he looked back of the train from where he was and that he did not notice the child there before the train started; that the child was not back of the train when it started.

The witness Ward testified that he saw the child at the rear of the train just as the train began to move back, and that he was not over two feet from the rear coach at that time. Sprouse testified that the child was not over two or three feet from the rear end of the coach when the train began to back. On the other hand, the witness Wynne testified that he saw the child just as the train started backing and that he was then coming over the west rail of the track in the rear of the train going to the east side—crossing the rail farthest from the depot, and that he appeared to witness to be about ten or fifteen feet from the rear coach, and that when the car got within about six feet his further view of the child was cut off. The witness Labit testified that the car had moved about half a car length when he heard the child cry. It was shown that a car is sixty feet long. When this witness got upon the ground and looked under the car he saw the child about half way between the front and rear ends.

While there is much in the testimony of the witness Wynne that tended to discredit him, we can not say that his testimony on this point, in view of the corroboration of the witness Labit, was unbelievable, or such as the jury, acting within their proper province, were not authorized to consider.

Upon these disputed issues of fact we conclude, in deference to the verdict of the jury, that the brakeman and other employees of appellant operating the train did not exercise ordinary care to see that the track was clear before backing the train, and that had such care been exercised the child, who was not chargeable with contributory negligence, would have been discovered upon the track and his injury averted.

By its first assignment of error appellant complains of the action of the court in refusing to give to the jury their first special charge, instructing a verdict for defendant. The second assignment complains that the verdict is not supported by the evidence. The only proposition following these assignments is, in substance, that the tes-

timony was insufficient to support the verdict and judgment, in that it wholly failed to show that the injuries complained of resulted from the negligence of defendant in any particular alleged in plaintiff's petition, but on the contrary, all the evidence, or a great preponderance thereof, showed plaintiff's injury to have been the result of an unavoidable accident and not proximately caused by the negligence of defendant in any particular.

Plaintiff alleged in his petition several grounds of negligence of defendant upon which liability is predicated, among others being the following:

"That the injuries to the said Fred Otis Brouillette were directly and proximately caused by the carelessness and negligence of defendant, its servants, agents and employees . . . in negligently and carelessly failing to discover the peril of said child, and in negligently and carelessly failing to keep and maintain a lookout on the rear end of its train while the same was being operated in the manner stated, that is, being backed along its said track . . ."; that had "a lookout been kept on the rear end of said train, which there was none, they could have seen and known of the position and danger of said child, and could have seen him enter upon said track, and could have seen and known of his peril and danger in ample time to have prevented injuring him, and could, with any degree of diligence and care, have so prevented injuring him."

It appears that when the train stopped at the water tank it blocked Green Avenue, a public thoroughfare, so completely that all travel upon it across the railroad track was prevented; and that as long as the travel was thus stopped the only way left open for travel across the track was either in front or in the rear of the train. We think that appellant's employees, with knowledge of this fact, should reasonably have anticipated that some traveler or other person whose further progress over the streets had thus been blocked might attempt to cross the track in the rear of the train, and this raised the duty upon their part to use ordinary care before starting the train in motion to see that someone so crossing would not be exposed to danger from its backward movement. A failure on the part of the employees to use such care would be negligence for which appellant would be responsible in damages to a person injured thereby who was not precluded from recovery by reason of contributory negligence. Galveston, H. & N. Ry. v. Olds, 112 S. W., 792; Houston, E. & W. T. Ry. v. Adams, 44 Texas Civ. App., 288 (98 S. W., 222); Houston & T. C. Ry. v. Sympkins, 54 Texas, 615; Texas & P. Ry. v. Watkins, 88 Texas, 20; San Antonio & A. P. Ry. v. Vaughn, 5 Texas Civ. App., 195.

Fred Otis Brouillette being only two years and seven months old, can be held, as a matter of law, to have been not guilty of negligence or contributory negligence in being on the track at the time when and in the place where he was injured. Railway v. Olds, supra; Evanisch v. Gulf, C. & S. F. Ry., 57 Texas, 128; Cook v. Houston Direct Nav. Co., 76 Texas, 358; Texas & P. Ry. v. Fletcher, 6 Texas Civ. App., 737; Thompson v. Missouri, K. & T. Ry., 11 Texas Civ. App., 307 (32 S. W., 191); San Antonio & A. P. Ry. v. Vaughn, 5 Texas Civ. App., 195 (23 S. W., 745).

The evidence being sufficient to justify the jury in finding that appellant was guilty of negligence in failing to keep a proper lookout for persons on the track who, in the circumstances, were likely to be injured by the backward movement of the train, and plaintiff's petition having sufficiently charged negligence in that regard, the assignments must be overruled.

Appellant, under its third and fourth assignments, contends that under the facts in this case Fred Otis Brouillette was a trespasser upon defendant's track, and the defendant owed him no affirmative duty to discover him in his position of danger, and unless discovered by the train operatives in time to have prevented his injuries by the use of all means at hand consistent with the safety of the train, there could be no recovery.

What we have said in disposing of the first and second assignments also disposes of the third and fourth adversely to this contention. In this State it is now well settled that the operatives of a railway train owe the general duty of lookout not only to those who are of right upon the track, but trespassers as well. If in this the operatives are derelict, a recovery will be denied to a trespasser, not because the railway company is acquitted of wrong, but because the trespasser's own want of care intervened. This doctrine was announced in the Sympkins case above cited, where an adult, a trespasser upon the track, was held entitled to recovery upon proof that after going upon the track he was providentially stricken down, and the company, by failing to discharge the general duty of lookout, had injured him. It is also recognized and followed in the cases above cited. In this case the question of negligence or contributory negligence of the child in being upon the track can not arise, and was not in issue. The assignments are overruled.

The third paragraph of the court's general charge is assailed by appellant's fifth assignment. The paragraph reads as follows:

"You are instructed that if you believe, from a preponderance of the evidence in the case, that plaintiff, Fred Otis Brouillette, at the time and place alleged in his petition, was run over and injured by the moving train of defendant, known as the 'Oriole,' while said train was being backed up from its water tank to its depot in the city of Orange; and you further so believe that the child, Fred Otis Brouillette, started from his home to the depot of the defendant, and that the usual and customary way of travel from his home to said depot was obstructed and blocked by the train and cars of the defendant on its line of railroad; and you further so believe that the said child, the plaintiff herein, in approaching said train and cars in order to reach the depot or any other place, turned and went on the railroad right of way along and by the side of said train and cars on said railroad track, and in attempting to cross said track was run over by said cars and injured, and at the time it was so run over the said train was backing up from the water tank of the defendant to its depot; and you further so believe that the agents and employees of the defendant, in charge of said train, were negligent in backing said train at said time and places and manner, without using ordinary care by keeping a reason-

able lookout for persons on its track while said train was moving backward; and that said negligence was the direct and proximate cause of the injury to the plaintiff, if any; and you further find and believe from the evidence that by the use of ordinary care and diligence on the part of the said agents and employees of the defendant while said train was moving backward, it could and would have discovered the child upon its railroad track; or, by the use of ordinary care and diligence on the part of said agents and employees of the defendant, while said train was moving backward it could not only have seen said child, but could have reasonably anticipated that it would probably attempt to cross the railroad track, upon which the cars were being propelled, behind said cars, and by the use of such care and diligence the defendant could have discovered the peril and danger to said child in time to avoid the injury, then you will find for the plaintiff."

We have carefully examined the part of the charge complained of and think it sufficiently applied the law to the peculiar facts of this case. It is at least not subject to the criticisms offered to it. The assignment and all propositions thereunder are overruled.

The same may be said of the other portions of the court's charge complained of in the sixth and seventh assignments of error. The assignments with their numerous propositions are overruled.

By its eighth assignment appellant complains that the court erred in refusing to give the following special charge requested by it:

"You are instructed that if the defendant's employees in charge of its train which injured Fred Otis Brouillette did not in fact discover his danger in time to avoid injuring him, and if you further find that persons of ordinary prudence, situated as defendant's said employees in charge of its train were, at the time of and prior to the injury, would not have reasonably foreseen or expected that the plaintiff, Fred Otis Brouillette, would be in a position where he would be injured by backing said defendant's train, then the defendant is not liable to the plaintiff in this case and you must return your verdict for the defendant."

This charge, in effect, instructs that if the employees did not in fact discover the danger of the child and if they could not have reasonably foreseen or expected that the child would be in a position of danger from the backing of the train, the defendant would not be liable, and ignores the duty to keep a reasonable lookout, varying according to the probability of danger, devolving on those in charge of a railroad train in motion. Houston & T. C. Ry. Co. v. Sympkins, 54 Texas, 615; Yoakum v. Mattasch, 26 S. W., 129. The charge was correctly refused. The assignment is overruled.

On the measure of damages the court charged the jury as follows:

"You are instructed that in the event you find in favor of plaintiff, in estimating the actual compensatory damages to which he is entitled you may take into consideration and award him such a sum of money as will fairly compensate him for physical and mental suffering which he has suffered or may suffer in the future, if any, and his diminished capacity, if any, to earn money after he shall have arrived at the age of twenty-one years. You must not allow him anything for diminished earning capacity during the period of his minority, and awarding him

as a whole only such a sum of money as, if paid now, would actually compensate him for the injuries, if any, sustained."

The complaint is that the pleadings and evidence did not warrant the court in submitting to the jury as an element of damage the plaintiff's future physical sufferings. Plaintiff alleged:

"That because of the injuries to the said Fred Otis Brouillette, caused and occasioned as herein alleged, he has suffered sickness, disease and pain; his constitution and physical strength have been permanently impaired. His ability to earn a living after he reached the age of majority and from the time of said injury has been permanently impaired. That he has been deprived of his left leg below the knee and has been rendered a cripple for life, and although a vigorous child before said injury said shock and injury have caused him to become nervous and weakened mentally and physically, and because of all such injuries he has suffered great damage."

The evidence established that the child's leg was .amputated between the knee and ankle. His mother testified that he still suffered from the injury and that he suffered when he had his leg cut off; that he suffered for a long time afterwards. His leg got sore two or three times after it was cut off and he still suffered from it and sometimes complains of it; that it is very tender to the touch and that he complained of it hurting him at the end of the stump.

The pleadings of plaintiff and the evidence quoted justified the charge complained of. San Antonio & A. P. Ry. v. Beauchamp, 54 Texas Civ. App., 123 (116 S. W., 1163); Texas & P. Ry. v. Curry, 64 Texas, 87; Brown v. Sullivan, 71 Texas, 476; San Antonio & P. Ry. v. Weigers, 22 Texas Civ. App., 344 (54 S. W., 910).

The claim that the charge permitted a recovery for future mental and physical suffering, regardless of whether such suffering proximately resulted from the injuries, and permitted a recovery of double damages, is without merit. The ninth assignment raising the points discussed is overruled.

The tenth, eleventh, twelfth, thirteenth and fourteenth assignments have been examined by us and we are of the opinion that no reversible error is pointed out in any of them and they are severally overruled.

The fifteenth assignment of error complains that the verdict and judgment are excessive. The judgment is for $30,000. The child suffered amputation of his leg between the knee and ankle. The evidence showed that up to the time of the trial he suffered frequently as a result of the injury. That he will suffer mentally and physically in the future is a conclusion justified by the facts proven. But there was no physical injury other than the loss of the leg. With that exception he is a healthy, well developed, normal child. True it is that he will be deprived of many of the pleasures and privileges of boyhood, and in manhood will be seriously handicapped in the race of life; but we think the verdict and judgment were for a greater amount than the evidence justified, and that the jury must have been actuated by sympathy or some motive other than the facts and did not adhere closely to the instructions in the charge of the court on the measure of damages. The assignment is sustained; and the judgment of the court below will be reversed and the cause remanded, unless the

appellee shall, within ten days, file in this court a remittitur of $10,000, thereby reducing the judgment to $20,000. In case such remittitur is filed in said time the judgment will be affirmed.

*Affirmed on remittitur.*

Writ of error refused.