## MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS v. MARVIN A. NESBIT.

### Decided October 17, 1906.

**1.—Injury to Child—Employes with Defective Sight and Hearing—Negligence.**

The engineer in charge of defendant's engine was partially blind and the fireman partially deaf.    A child four years of age was struck and injured by the engine while attempting to cross the railroad track; for some time and distance before reaching the crossing the child was in plain view of the engineer and the purpose of the child to attempt to cross the track in front of the engine was evident. Held, if the infirmities of the engineer prevented him from seeing the child, then defendant was negligent in employing him; and if he could, by the exercise of ordinary care, have seen and known that the child intended crossing the track, then his negligence will be imputed to defendant.

**2.—Child—Contributory Negligence.**

The same rules can not be applied to children of tender years as to adults in the matter of negligence; such children can not be guilty of contributory negligence.

**3.—Objectionable Argument—Absence of Exception.**

Unless objection is offered to an argument at the time it is made, notice of the objection will not be taken on appeal.

**4.—Failure to Introduce Witness—Hearsay.**

Plaintiff proved by one of the attorneys for defendant that the conductor on the train that caused the injury was present at the trial, and defendant then sought to prove what the conductor testified to on a former trial. Held, properly excluded as hearsay.

**5.—Child—Presumption of Danger—Negligence.**

Defendant could not excuse its negligence on the ground that the child would not have been hurt if it had not fallen as it attempted to cross the track. Defendant had no right to assume that an infant four years of age could pass safely across the track in front of its moving engine. It was negligence to permit the exigency to arise.

**6.—Verdict, not Excessive.**

A verdict for $20,950 will not be set aside as excessive for injuries to a child four years old causing the amputation of one leg below the knee, the loss of a toe on the other foot, and wounds in the head, from all of which he suffered great agony, in the absence of something indicating that the verdict was the result of passion or prejudice.

Appeal from the District Court of Trinity County. Tried below before Hon. Gordon Boone.

*T. S. Miller, Bean & Nelms* and *Thomas & Rhea.* for appellant.— The action of the plaintiff in traveling along the pathway adjacent to the track on which the train was moving was not such as to cause an ordinarily prudent man, situated as defendant's employes were situated, to anticipate that he would attempt to cross the track immediately in front of the engine, and in a position of danger or peril, and the accident, therefore, was not the direct and proximate result of the negligence charged. Seale v. Gulf, C. & S. F. Ry. Co., 65 Texas, 275; Bush Electric Light & Power Co. v. Lefevre, 93 Texas, 604; Texas & P. Ry. Co. v. Bigham, 90 Texas, 225; Mutual Insurance Co. v. Tweed, 7 Wallace, 44; Milwaukee & St. P. Ry. Co. v. Kellogg, 94 U. S., 469; Scheffer et al. v. Washington, etc., R. R. Co., 105 U. S., 249; Chicago, etc., Ry. Co. v. Elliott, 55 Fed. Rep., 950; Galveston, H. & S. A. R. R. Co. v. Chambers, 73 Texas, 296; Galveston, H. & S. A. R. R. Co. v. Kiel, 60 S. W. Rep., 543; Chicago & A. R. R. Co. v. Becker, 76 Ill., 25, 36 Am. St. Rep., note page 87 et seq.; Berlin Mills v. Croteau, 88 Fed. Rep., 860; Texas & P. Ry. Co. v. Woods, 28 S. W. Rep., 416; Texas & P. Ry. Co. v. Beckworth, 32 S. W. Rep., 348; Rose v. Gulf, C. & S. F. Ry. Co., 17 S. W. Rep., 789.

The verdict of the jury was unduly influenced by the argument of T. H. Ball, Esq., in his closing remarks to the jury, wherein he gave the jury the benefit of his knowledge and acquaintance of the character and reliability of the plaintiff's witness, F. M. Court, as is more fully shown by this defendant's bill of exception on file in this cause, and the court erred in overruling this defendant's motion for a new trial on account thereof. District Court Rules, 38-41, 20 S. W. Rep., 14; Enc. of Pleading & Practice, vol. 2, 738; Hanna et al. v. Gulf, C. & S. F. Ry., 65 S. W. Rep., 495; Texas & P. Ry. v. Rea, 65 S. W. Rep., 1115; Ft. Worth & D. C. Ry. v. Lock, 70 S. W. Rep., 456; Phoenix Insurance Co. v. Stenson, 63 S. W. Rep., 543; Ft. Worth & D. C. Ry. Co. v. Burton, 60 S. W. Rep., 316; Halsey v. Bell, 62 S. W. Rep., 1088; Chicago, R. I. Ry. v. Jones, 81 S. W. Rep., 61; Missouri, K. & T. Ry. v. Huggins, 61 S. W. Rep., 976; Galveston, H. & H. Ry. Co. v. Cooper, 70 Texas, 67; St. Louis S. W. Ry. v. Boyd, 13 Texas Ct. Rep., 233; Bitterman v. Hearne, 32 S. W. Rep., 341; German Ins. Co. v. Harper, 67 S. W. Rep., 755; Wolffe v. Minnis, 74 Ala., 386; Browne v. Swine-

ford, 44 Wis., 282; s. c. 28 Am. Rep., 582; Cleveland Paper Co. v. Banks, 15 Neb., 20; s. c. 48 Am. Rep., 334; Union Central Life Ins. Co. v. Cheever, 36 O. St. Rep., 201; s. c. 38 Am. Rep., 273.

Whenever the rule which requires the argument to be confined to the evidence and argument of opposing counsel is violated, whether it was done intentionally, recklessly or wilfully, there is a violation of the rights of the opposing party to have the argument so confined, and a new trial will be granted unless it appears probable that the verdict was not influenced by the improper argument. Houston, E. & W. T. v. McCarty, 13 Texas Ct. Rep., 876, and authorities there cited; Gulf, C. & S. F. Ry. v. Jones, 73 Texas, 235; Galveston, H. & S. A. Ry. Co. v. Kutac, 72 Texas, 643; Western Union Tel. Co. v. Burgess, 60 S. W. Rep., 1023; St. Louis S. W. v. Holmes, 49 S. W. Rep., 659; Hunsock v. Roberts, 65 S. W. Rep., 675; Chicago, R. I. & T. v. Musick, 76 S. W. Rep., 221; Garritty v. Rankin, 55 S. W. Rep., 368; Galveston, H. & S. A. v. Wesch, 85 Texas, 593; German Ins. Co. v. Harper, 67 S. W. Rep., 755; Browne v. Swineford, 44 Wis., 282; Wolffe v. Minnis, 74 Ala. 386.

It is primarily the duty of the court to see that counsel confines his argument to the record, and it was not incumbent upon the defendant to request the court to charge the jury to disregard the improper argument, but it was sufficient on the part of appellant to call the court's attention to the improper argument, and reserve its exception thereto. District Court Rule, 41, 20 S. W. Rep., 14; Willis & Bro. v. McNeill, 57 Texas, 474; Willis & Bro. v. Lowry, 66 Texas, 541; St. Louis S. W. Ry. Co. v. Dickens, 56 S. W. Rep., 124; Wolffe v. Minnis, 74 Ala., 386; Browne v. Swineford, 44 Wis., 282.

The court erred in admitting the testimony of R. E. Oney on behalf of plaintiff over this defendant's objection to the effect that no effort was made to stop the train until after the child was struck; that he was on the fireman's side, and hallooed and waived, and if any attention was paid to his signals he did not see it, as more fully shown by this defendant's bill of exception on file in this cause, and the court further erred in overruling this defendant's motion for a new trial based on this error. Willis Bro. v. McNeill, 57 Texas, 474; Jones on Evidence, secs. 136, 137; Platner v. Platner, 78 New York, 90.

A party to the suit has the right to introduce evidence to explain why a witness was not offered. Houston & T. C. Ry. Co. v. Smith, 51 S. W. Rep., 506; Western U. T. v. Waller, 12 Texas Ct. Rep., 16; International & G. N. v. Wear, 77 S. W. Rep., 272.

The testimony of a person who heard a witness testify on a former trial of the same case is admissible, when offered for the purpose of showing what said witness testified on the former trial, even though the witness himself may be available. See authorities under first proposition under this assignment, and also Greenleaf on Evidence, sec. 100. McKelvy on Evidence, sec. 139; Smith v. Whittier, 30 Pac. Rep., 529 (see p. 532.)

*H. L. Robb, Lovejoy, Houk & Love* and *Andrews, Ball & Streetman,* for appellee.—An ordinarily prudent person, situated as were defendant's employes, would, in the exercise of ordinary care, have seen plain-

tiff traveling along the pathway adjacent to the track on which the train was moving, and have anticipated that plaintiff would attempt to cross the track in front of the engine, and the negligence of defendant's employes in failing to do so was the direct and proximate cause of plaintiff's injuries, and the issue was for the jury, which so decided. Missouri, K. & T. Ry. v. Nesbit, 13 Texas Ct. Rep., 656.

Plaintiff's injuries could have been avoided by the exercise of ordinary care upon the part of defendant's employes in charge of the train, and the evidence affirmatively shows that his injuries were due to their negligence. Missouri, K. & T. Ry. v. Nesbit, 13 Texas Ct. Rep., 656; Texas Pac. Ry. v. Horby, 67 S. W. Rep., 543; McGrew v. St. Louis, S. F. & T. Ry. Co., 74 S. W. Rep., 818; Livingston v. Wabash Ry. Co., 71 S. W. Rep., 137; Gulf, C. & S. F. Ry. v. West, 36 S. W. Rep., 101; Missouri, K. & T. Ry. v. Hammer, 78 S. W. Rep., 708.

Special charge No. 2 offered was correctly refused, because said instruction was vicious in principle and incorrect as a matter of law. It ignored the alleged negligence of defendant in employing a blind engineer and the alleged negligence of such engineer in the operation of defendant's train. The charge ignores the fact that there can be two concurrent proximate causes, and even though the fact that plaintiff fell on the track was one of the proximate causes of his injuries, it would not relieve the defendant, if its negligence in having a blind engineer, or one who operated its engine negligently, also concurred in causing the accident. Missouri, K. & T. Ry. v. Nesbit, 13 Texas Ct. Rep., 657; Gonzales v. City of Galveston, 84 Texas, 7; Missouri Pac. Ry. v. Somers, 78 Texas, 442; New York, T. & M. Ry. v. Green, 90 Texas, 257; Pope v. Riggs, 43 S. W. Rep., 306; Jackson v. Martin, 41 S. W. Rep., 837; Texas & N. O. Ry. v. Kelly, 80 S. W. Rep., 81, 82.

FLY, ASSOCIATE JUSTICE.—This is a personal injury suit instituted by appellee, a minor, through his father as his next friend, and on a trial by jury, resulted in a verdict and judgment for appellee in the sum of $20,950.

The grounds of negligence were alleged as follows: "Plaintiffs allege that the injuries to the said Marvin A. Nesbit were directly and proximately caused and occasioned by the negligence and carelessness of the defendant, its servants, agents and employes, in that defendant negligently had in its employment at the time of the accident to plaintiff an engineer and fireman operating the engine which injured plaintiff, said engineer and fireman being wholly incompetent for their respective positions, in that the engineer was partially blind and the fireman partially deaf, and their ability to keep a proper lookout or observe and hear signals or alarms when given, was greatly affected and impaired; that defendant, its agents and employes negligently and carelessly operated its engine and cars at said time, at and near said crossing and across the same, at Willard, Texas, in a dangerous, careless and improper manner, negligently and carelessly failing to keep any lookout for persons on or near said crossing, and particularly the plaintiff, Marvin A. Nesbit; that just before the said Marvin A. Nesbit entered upon said track, the defendant's servants in charge of said engine were warned by persons in proximity to the track, that said child was ap-

proaching said track, and notwithstanding said warning, defendant's servants failed and refused to stop said engine, and negligently and carelessly ran said child down; that at the time said warning was given, said engine was a considerable distance from said child, and that, if the engineer and fireman, in charge of said engine, had been competent to heed said warning, or had kept a proper lookout, or had used proper care and caution in the operation of said engine, they could have seen said child approaching and could have seen him enter upon said track, and could have seen the danger and peril to which the child was then and there exposed in ample time to have prevented injuring him."

The evidence discloses that appellee, at the time he was hurt was a child four years of age and, that in endeavoring to cross the railroad, he stumbled, fell and was struck and injured by a locomotive belonging to appellant. The accident occurred at a crossing in the town or village of Willard and was a much frequented crossing for the people of the town as well as those of adjoining towns. The boy was at a point on a platform to the north of the main line of the railway about 225 feet from the crossing, and the train, which consisted of the locomotive and two coaches, one a passenger and the other a combination coach, was at a water tank about 550 feet from the crossing. The platform from which the boy started was situated between two side tracks, the one nearest the main line running to a planing mill and the other to a saw mill. The boy started from the platform in a westerly direction along a much traveled foot path that ran between the two side tracks in the direction of a road that crossed both side tracks and the main track. When he got to the "dirt road" he turned directly south and after crossing the planing mill siding attempted to cross the main track at the usual crossing, and fell and was struck by the engine and carried for several feet and thrown from the track. At or about the time appellee started west along the side tracks to the road, the train which had stopped at a water station about 550 feet from the crossing, started for the crossing west of which was the platform used by passengers to enter and leave the train. The engineer who occupied a position on the north side of the engine was blind in his right eye, the one that was always to the outside of the track, and he was not looking along the track in front on the north side of the engine, but was looking across to the other side of the track and did not see the boy until the engine was almost or quite upon him, although he had, in plain and open view, traveled directly towards the railroad with the evident intention of crossing it, for 12 or 14 feet. We find that the fireman on the engine was so deaf that he could not hear the cries of warning given by parties who saw the danger in which the child was placed. There is evidence tending to show that the emergency brakes were not applied until after the child was struck. The child was in plain view when running parallel with the track, and it was negligence not to see him. We conclude that the evidence sustains the allegations of negligence. These conclusions of fact dispose of the first five assignments of error, which question the sufficiency of the evidence to sustain the verdict.

It is contended by appellant that one of the grounds of negligence alleged by appellee and submitted by the court was the failure to see

the child when it was traveling parallel with the track, but the record does not sustain that contention. The negligence alleged was a failure to see the child of tender years when he was approaching the track with the evident design of crossing it, and there is no mention of negligence when he was in any other position. The charge of the court follows the pleadings and bases the negligence of appellant on a failure of its employes to see the child when he was approaching the crossing, and does not mention the time while he was going in a direction parallel with the main track. The engineer, however, should have anticipated that the child was going to turn at the dirt road and attempt to cross the track, and when he had made the turn he should have anticipated, as all the bystanders did, that he was going to attempt to cross in front of the locomotive; and any man should have known that if a little four year old boy made such an attempt that he would be in a very dangerous and perilous position. Oney evidently anticipated danger to the child from the time he left the platform, because he says that he got up and watched the boy after he left the platform and as he kept coming the witness moved forward several steps and when the child started to cross witness moved toward the engine. Floyd Getsinger, a witness for appellant, stated that the boy was running trying to beat the train, and that he was just a little ahead of the train and that there was nothing to obstruct the view of anyone on the engine. Eliza Hall, another witness for appellant, seems to have anticipated that the boy would attempt to run in front of the engine even when he was running parallel with the track for she stated: "He aimed to make it down to the crossing to get across to the store." She further said: "I was looking at him coming to see him make it across, you know, and I noticed the train, too, was coming, and was looking to see whether it was going to catch him before he could get across or not."

As stated by the fireman, it was the duty of the engineer to look out for people that might be approaching public roads, but in this instance he either could not, on account of his defective vision see the boy, or made no effort to see him because he not only did not ascertain that appellee was approaching the track, but did not know of his presence on the track until he was called to by the fireman. If his infirmities kept him from seeing the child then appellant was negligent in employing him, and if he could by the exercise of ordinary care have known the child intended crossing the track then his negligence will be imputed to appellant. If he had seen the child he would have known that he intended to run across the track and that he probably would be injured in the attempt. Everyone in plain view of the place of accident seems to have seen the boy before he attempted to cross the track except the three employes of appellant on the engine.

If an adult had been running along a path parallel with the railroad towards a station, which was on the opposite side of the railroad, and the only means to get across to the station was a road crossing the track directly in front of the running man the engineer should have known from all the circumstances that the man was endeavoring to reach the station, but might have been justified in concluding that he would not attempt to cross the railroad directly in front of the train; but in the case of a child, four years of age, the engineer should have known, as

all the witnesses seemed to know, that the child was, from the time he left the platform, running a race with the train, and that if he got to the crossing ahead of the train that he would try to cross regardless of the danger. The same rules can not be applied to the actions of children of tender years as are applied to those of adults. The child was too young to be guilty of contributory negligence, too young to appreciate the dangers of his surroundings. An engineer with the power of vision that should be possession by an employe in so responsible a position would with the least degree of care have seen the child as he ran along in twelve or fifteen feet of the track, would have known what his object was, would have seen him when he made the turn at the dirt road for the crossing, and could and would have used means that would have protected the child. There is evidence tending to show that the train could have been stopped before injuring the child, even if proper means had been used after the child had reached the dirt road and turned directly towards the railroad, with the evident intention of crossing it. The child was not seen, however, and no effort made to stop the train until after he had been struck.

The sixth assignment of error complains of language used by T. H. Ball, Esq., counsel for appellee, in his closing speech to the jury. We learn from the bill of exceptions that Mr. Thomas, counsel for appellant, had criticised the testimony of Fred Court, a witness for appellee, and had said that Court was not willing to tell the facts in the interest of justice, but merely to oblige counsel. Mr. Ball said: "Mr. Thomas would not have argued this if he had known Court as his associates Mr. Bean and Mr. Nelms do. They tell you that they think him to be a conscientious man, and that he has told the facts as he believes them to exist. Why, because they know and I know that Court would not vary from the truth, as he understands it, for the whole M., K. & T. Ry. Co. of Texas; that all the gold that could be piled up in the courthouse would not cause him to shade his testimony a single iota, much less his friendship for me. And I say that to Mr. Thomas, as well as to you, here and now." No exception was taken to the language at the time it was spoken, but it was called to the attention of the court after the argument had been concluded.

It is the rule, as established by later decisions of the Supreme Court, that unless objection is offered to argument at the time it is made, notice of the objection will not be taken in an Appellate Court. (Moore v. Moore, 73 Texas, 362; Moore v. Rogers, 84 Texas, 1; Gulf, C. & S. F. Ry. v. Hockaday, 14 Texas Civ. App., 613.) As said in the cited case of Moore v. Moore: "It is peculiarly the office of an objection or exception of this character that it shall be made at the time of the act complained of, in order that the evil may be promptly remedied, and which it is presumed would be unhesitatingly done. But to allow without objection the continuation of such a line of argument would in some cases enable a party to take the chance of a favorable verdict, and which if adverse to him could be set aside upon objections which if promptly made would have resulted in a correction by the court."

It appears from the bill of exceptions that two of the counsel for appellant paid high tribute to the character of the witness Court, and it must be presumed that such commendation was fully as forceful and

effective with the jury as the testimonial offered by counsel for appellee, and the language of the latter could not have enhanced the reputation of the witness for truth and veracity. There was nothing in the language to inflame the minds or arouse the prejudices of a jury, and we think a case of negligence was fully made out without the evidence of Court, whose evidence differentiated from that of the other witnesses in no particular, except that he placed the boy farther from the engine when he fell than did the others. Appellant was guilty of negligence before the child reached the track, that rendered it liable.

The evidence of Valentine to the effect that the emergency brakes were not applied until the child was struck and dragged ten or fifteen feet was admissible to show that the employes on the engine did not know of the presence of the child on the track until it had been struck. It was also admissible to contradict the testimony of appellant's witnesses on that subject. The question of discovered peril did not figure in the case, but the failure of the engineer to see the child as it was entering danger was a material issue, and from the fact that he did not apply the brakes until after the child had been struck it could be reasonably inferred that he had not seen it. The same can be said of the evidence of Oney.

R. F. Bean, one of the attorneys for appellant, was placed on the witness stand by appellee, to prove that F. M. Wagner, the conductor on the train that caused the injury, was present at the trial, and appellant then sought to prove what Wagner testified to on a former trial. The evidence was properly excluded. If appellant desired to prove what Wagner knew, or did not know, about the case, it should have placed him on the stand. There is no rule by which the testimony could have been properly admitted. If Wagner did not witness the accident why not have introduced him to prove that fact, if it had any materiality? The evidence offered was hearsay of the clearest type. None of the authorities cited is applicable to the facts of this case.

The court did not err in refusing to give a special charge, requested by appellant, seeking to excuse it for its negligence on the ground that the child would not have been hurt if he had not fallen as he attempted to cross. Appellant had no right to assume that an infant of four years of age could pass safely across the track in front of its moving engine. It was negligence to permit the exigency to arise. This point was so decided on a former appeal of this case to the Court of Appeals of the First District, 88 S. W. Rep., 891.

Every issue raised by pleading and proof was clearly submitted by the court in its charge to the jury, and it was not error to refuse special charges requested by appellant. There is no merit in the criticisms of the charge of the court.

There was no evidence whatever tending to show that attention to other duties prevented the engineer from keeping a lookout along the track. It would be difficult to conceive of a case in which a railroad company could excuse its negligence in running over a child at a public crossing in a town or village, by proof that the engineer had other duties to perform that prevented him from keeping a proper outlook.

On the question of damages the court fully charged the jury, and did

not err in refusing additional charges on that subject tendered by appellant.

We can not sustain the contention that the verdict is excessive. The child had his right leg crushed so that it was amputated just below the knee and lost a toe on the left foot. He was severely wounded in the head and suffered great agony from his wounds. There is evidence tending to show that he may suffer and be inconvenienced through life from his injuries. There is no evidence of prejudice or passion upon the part of the jury. A verdict for $25,000 in case of the loss of a leg by a child three and a half years old, was affirmed by the Supreme Court of New York and approved by the Court of Appeals. (Ehrman v. Brooklyn City Ry., 14 N. Y. Supp., 336, same case 131 N. Y. App., 576.) It was held in that case that the size of the verdict did not evince the presence of passion or prejudice. The question of compensation must be left to the sound judgment of impartial and intelligent juries, and their verdicts should not be disturbed in the absence of something indicating that the verdict was the outcome of passion or prejudice. (Galveston, H. & S. A. Ry. v. Stevens, 15 Texas Ct. Rep., 977.)

There is no merit in the eighteenth assignment. Paragraph eight of the charge of the court on the measure of damages is clear and is not subject to the criticism that it is "erroneous, misleading and confusing." It is admitted by appellant that similar charges in a large number of cases have been approved by courts of last resort. The judgment is affirmed.

*Affirmed.*

Writ of error refused.