FT. WORTH & D. C. RY. CO. v. WININGER.

(Court of Civil Appeals of Texas. Amarillo.
Oct. 26, 1912. Rehearing Denied
Nov. 30, 1912.)

1. RAILROADS (§ 350*)—INJURIES TO CHILD ON TRACKS—NEGLIGENCE—EVIDENCE.

In an action for injuries to a child received while she was crossing railway tracks, evidence held sufficient to go to the jury on the question of the defendant's liability.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1152–1192; Dec. Dig. § 350.*]

2. RAILROADS (§ 376*) — INJURIES TO CHILD ON TRACKS—DUTY OF RAILROAD EMPLOYÉS —LICENSEES.

Railroad employés in charge of a train standing in a railway yard and cars moving therein, who knew of the presence of a child and her father, who were passing through the yard as licensees, were charged with the duty of using ordinary care to avoid injuring them.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1275–1279; Dec. Dig. § 376.*]

3. TRIAL (§ 252*)—INJURIES TO CHILD ON TRACKS—DUTY OF EMPLOYÉS—INSTRUCTIONS —EVIDENCE.

In an action for injuries to a child received while crossing railroad tracks in a railroad yard, a charge that it was the duty of the defendant's employés operating its trains to use ordinary care to discover and avoid injuring persons who might be upon or near its track was properly given, where the evidence disclosed that the yards were constantly used as a passageway to get from one side of the track to the other, and the person injured and her father were so using the yards at the time of the injury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

4. TRIAL (§ 244*) — INJURIES TO CHILD ON RAILROAD TRACKS—INSTRUCTIONS—UNDUE PROMINENCE TO ONE MATTER.

In an action for injuries to a child received while she was crossing railroad yards, an instruction which included a definition of ordinary care, with the qualification that the rule was not applicable if the injured person was not, at the time of her injury, possessed of sufficient intelligence to know and appreciate the danger of crossing under and between the cars while switching was being done, together with a definition of the issue of contributory negligence containing a similar qualification, and a submission of the issue of contributory negligence as applied to an infant of the years of the person injured, was not improper as giving undue emphasis to the exemption from contributory negligence theory.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 577–581; Dec. Dig. § 244.*]

5. TRIAL (§ 252*) — INJURIES TO CHILD ON TRACKS — CONTRIBUTORY NEGLIGENCE — INSTRUCTIONS—EVIDENCE.

In an action for injuries to a child, instructions defining ordinary care, with a qualification that the rule is inapplicable where the injured person is not possessed of sufficient intelligence to know and appreciate the danger, together with a definition of contributory negligence and a similar qualification, and a submission of the issue of contributory negligence as applied to an infant of the years of the person injured, were properly given, where the evidence showed that the plaintiff was less than six years old, was too small to go to school at the time, and had never more than once or twice made the trip which she was making at the time of her injury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

6. WITNESSES (§ 236*)—EXAMINATION—RIGHT TO COMPLAIN OF FAILURE TO EXAMINE.

A defendant, in an action for injuries to a child while crossing the defendant's railroad yard, cannot complain of the failure of plaintiff's counsel to interrogate her, when she was on the witness stand, to test her intelligence and ability to appreciate her danger at the time of the accident, as such matters could properly have been brought out by the counsel for the defendant.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 817–826; Dec. Dig. § 236.*]

7. RAILROADS (§ 369*)—INJURIES TO CHILD ON TRACKS—DUTY TO PERSONS IN YARDS.

Where a conductor in charge of a train standing in a railroad yard saw a child and her father walking along the right of way near the cars under his care, and knew that a public crossing near by was blocked, he was charged with the knowledge that such person might attempt to cross said cars at the first opening between the same, and in attempting to do so would be in a position of danger, and it was his duty to keep a lookout in that direction before giving a signal for the movement of such cars.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1259–1262; Dec. Dig. § 369.*]

8. RAILROADS (§ 356*)—OPERATION—DUTY TO PERSONS IN YARDS.

The constant use of railroad yards as a passageway from one side of the track to the other is sufficient to charge the railroad company with notice thereof and to impose upon its employés the duty to use ordinary care to prevent injury to persons so using the yards.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1228–1234; Dec. Dig. § 356.*]

9. APPEAL AND ERROR (§ 742*)—ASSIGNMENTS OF ERROR — PROPOSITIONS CONTAINED — REQUIREMENT FOR SINGLENESS.

A reviewing court under rules for the Courts of Civil Appeals (rule No. 32 [142 S. W. xiii]), relating to briefs and providing that propositions, if more than one, under one ground of an assignment, shall refer to it and be stated separately, need not consider an assignment of error containing three separate and distinct propositions of law.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

10. DAMAGES (§ 216*)—INJURIES TO CHILD— INSTRUCTIONS—EVIDENCE.

Where, in an action for the loss of a foot while crossing railway tracks, the evidence developed that before the injury the child injured was sound, healthy, and well developed, a charge on her loss of earning capacity after she should arrive at the age of 21 years was proper, though there was no direct and specific proof thereof.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 548–555; Dec. Dig. § 216.*]

11. DAMAGES (§ 216*)—INJURIES TO CHILD— PHYSICAL AND MENTAL SUFFERING — INSTRUCTIONS.

Where the evidence disclosed that plaintiff's leg was badly mangled above the ankle, and the ankle partly crushed, that an amputation between the ankle and knee was necessary, that the leg, from which the foot was amputated, would not develop to the same size as the other, and that the child was forced to take an anæsthetic for the amputation, remained in bed about a week thereafter, and was extremely nervous thereafter, an instruction on physical and mental suffering was properly given.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 548–555; Dec. Dig. § 216.*]

**12. NEGLIGENCE (§ 141*)—IMPUTED NEGLIGENCE—INJURIES TO CHILD—NEGLIGENCE OF FATHER—INSTRUCTIONS.**

In an action for injuries to a child while crossing railway tracks, a charge authorizing a finding for defendant, if the child was induced to go between or under defendant's cars by her father, and the accident would not have occurred but for her father's act, was properly refused for its failure to require a finding that the act of the father was the sole cause of the accident, as otherwise contributory negligence of the father would be imputed to the child.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 382–399; Dec. Dig. § 141.*]

**13. NEGLIGENCE (§ 141*)—INJURIES TO CHILD—CONTRIBUTORY NEGLIGENCE—AGE—INSTRUCTIONS.**

In an action for injuries to a child while crossing railway yards, a requested instruction that if there was open to the plaintiff, before she and her father started to cross defendant's train, another way which was safe, and if plaintiff voluntarily chose the unsafe way, she was guilty of negligence which, if it contributed to her injury, would preclude a recovery, was properly refused because it would hold such child responsible for contributory negligence notwithstanding her tender years and without inquiry as to her capacity to select between a safe and dangerous way.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 382–399; Dec. Dig. § 141.*]

**14. TRIAL (§ 191*)—INJURIES TO CHILD ON TRACK—INSTRUCTIONS ASSUMING FACTS.**

The instruction was further erroneous in assuming that the child attempted to cross defendant's train where the evidence shows that she was crossing through an opening between cars standing upon a side track, which were no part of the train which caused her injury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 420–431, 435; Dec. Dig. § 191.*]

**15. TRIAL (§ 260*) — REQUESTED INSTRUCTION —INCLUSION IN GENERAL CHARGE.**

A special charge requested was properly refused where the proposition presented was fully covered by the general charge of the court.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

**16. APPEAL AND ERROR (§ 1060*)—TRIAL (§ 125*)—ARGUMENT OF COUNSEL—IMPROPRIETY—PREJUDICE.**

In an action for injuries to a child while crossing railroad tracks, a statement of the plaintiff's counsel that "they (meaning the attorneys for defendant) make me tired in talking about sympathy for this little girl (pointing to the plaintiff). Oh, yes, I wonder how about the bondholders and coupon clippers that own this road"—was improper as relating to matters outside the record, but will not constitute reversible error where called forth by expressions of sympathy for the plaintiff by the opposing counsel, and the verdict was not excessive.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4135; Dec. Dig. § 1060;* Trial, Cent. Dig. §§ 303–307; Dec. Dig. § 125.*]

**17. DAMAGES (§ 132*)—EXCESSIVE—LOSS OF FOOT.**

Ten thousand dollars is not excessive recovery for the crushing of a foot of a child five years and eight months old, which necessitated amputation about halfway between the foot and the knee.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 372–385, 396; Dec. Dig. § 132.*]

Appeal from District Court, Donley County; J. N. Browning, Judge.

Action by Halys Wininger, by her next friend, E. H. Wininger, against the Fort Worth & Denver City Railway Company. From a judgment for plaintiff, defendant appealed to the Court of Civil Appeals, and, from a judgment of reversal therein, plaintiff brought error to the Supreme Court. Heard on a reversal and remand to the Court of Civil Appeals. Judgment for plaintiff affirmed.

See, also, 141 S. W. 273, and 143 S. W. 1150.

Spoonts, Thompson & Barwise, of Ft. Worth, H. B. White, of Clarendon, and Turner & Wharton, of Amarillo, for appellant. A. T. Cole, of Clarendon, and D. W. Odell, of Ft. Worth, for appellee.

PRESLER, J. In this case appellee, Halys Wininger, sues by her next friend, E. H. Wininger, to recover damages on account of injuries sustained by her in the yards of the Ft. Worth & Denver City Railway Company at Clarendon, Tex., on the 25th day of April, 1909, necessitating the amputation of her limb between foot and knee. At the time of the injury, she was about five years and eight months old. A verdict was rendered against appellant for $10,000, and judgment entered in accordance therewith. From which said judgment appellant has duly appealed, and the case is before this court for revision. At a former day of the last term, this court (141 S. W. 273), by an opinion handed down by Chief Justice Graham, reversed and rendered this cause, holding that the evidence, taken as a whole, failed to show such negligence as is alleged in the petition on the part of appellant or its employés, proximately causing the injury complained of, and that the charge requested by appellant, giving a peremptory instruction to the jury to return a verdict for appellant, should have been given. On error brought by appellee, the Supreme Court (143 S. W. 1150) on February 21, 1912, reversed the judgment of this court, and remanded said cause to this court to be disposed of in accordance with the opinion of the Supreme Court, stating the evidence on the question of appellant's liability, which statement we here adopt, as follows:

[1] "Clarendon is the county seat of Donley county, and the road of the defendant company passes through the town, we will say from east to west, dividing the town so that hotels and some business houses and residences are north of the tracks; but the main business houses, churches, and schoolhouses are on the south of the railroad tracks. The tracks of the railroad extended from east to west, as before stated, and the side tracks and switches, in fact, the

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

yards of the railroad, were located on the north side of the track, embracing about 400 feet north and south, and 3,000 feet east and west. Three switch tracks were located on the north side of the main track, numbered 1, 2, and 3, and one switch track on the south. A water tank and coal chute were located in the yards.

"The company's said yards had been inclosed by a post and wire fence for many years, but the fence was not in good repair at the time of the injury, and had not been for some time prior thereto; there being places where the wire was loose from the posts, and in one or two places the top wires had been tied together so as to allow easy passage of pedestrians through the fence, and those who had occasion so to do had been for many years going through and over said fence and across said yards and tracks to such an extent as to make reasonably well-beaten paths along and across said yards, which existed at the time of the occurrence. Children living in the same vicinity with appellee on the north side of the tracks had been habitually going and coming across said yards in attending school on the south side thereof. Garnet street is the first open street east of the yards connecting the north and south sides of the city, and it was generally used by persons in the northeast and southeast portions of the city in passing from north to south over the line of railroad. Appellee. resided with her father in the southeast corner of block No. 238, the east boundary line of which forms the west boundary of Garnet street, and it is the second block north from the company's yards; his residence being about 500 or 600 feet a little west of north from where the company's main line crosses Garnet street. The church to which appellee and her father had started when she received her injuries was situated in the northeast corner of block No. 42, being the fourth block and about 700 or 800 feet south of the company's main line, and between Gorst and Kearney streets. It is thus seen that appellee resided northeast of the company's yards, and the church to which she was going was southwest thereof.

"On Sunday morning, about 9 o'clock, about April 25, 1909, appellee, in company with her father, left their home to go to church, intending to cross the railroad on Garnet street; but, as they came out of their residence, they saw that an engine and train attached, headed east, was standing across Garnet street so they took one of the trails or paths mentioned, leading in a southwest direction, and followed it until after they got into the company's yards, passing onto the yards about 1,000 feet east of the water tank, and reached switch track No. 3 at about 950 feet east of the water tank; but, as there was a string of cars on track No. 3, they continued in a west course on the north side of the

track until getting within about 500 or 600 feet of the water tank. They came to the caboose, which had been cut loose from the train, and here they crossed track No. 3 east of the caboose so as to be between it and track No. 2, and continued their journey west. About the time they were passing the caboose, they passed also the conductor, who was on the ground between tracks Nos. 2 and 3 and near the west end of the caboose; he seeing them, and they him. There then being a string of cars on track No. 2, they continued their journey west between tracks 2 and 3 to a point slightly east of the water·tank, when they tried to cross track No. 2 by going between cars, which were separated a space of six to eight feet on track No. 2, and in attempting to cross track No. 2 at this point appellee received her injury by a car which was moving west on track No. 2; the father at the time being from one to two steps ahead of her. At the time they passed the conductor and brakeman as hereinbefore mentioned, the father was slightly ahead of the child. While appellee and her father were going west between tracks 2 and 3, after they had passed the conductor, they saw the rear brakeman on top of the train then on track No. 2, and he saw them, and they passed on by. There was a long string of empty box cars standing on track No. 2, extending from about 15 to 20 cars east of the water tank to 20 or 25 cars west of it; this string of cars being uncoupled in two or three places, leaving a short space between where uncoupled. As the crew were backing in on track No. 2 the second time to pick up the first division of their train left there, while moving from two to six miles per hour, they backed against it, causing it to move the string of cars west and on the same track, and appellee was injured about 15 cars west of where the crippled car was, and by one of the cars which was on the track when the freight train pulled into the yards, and one not belonging to the train, being handled by the crew. At the time the injury was inflicted, the east end of the train was pointing south of east, and the west end of it south of west, so as to place the most northerly portion of the train about the middle thereof and about opposite where the caboose stood, making a curve in the south side of the train. The conductor, at the time of the injury, was about 31 to 35 car lengths from the engine, and was on the north side, and could have seen appellee and her father at all times after they passed him until they passed behind a car on track No. 2, which caused the injury. The train and crew were under the control and direction of the conductor; the crew consisting of the conductor, the rear and head brakeman, and the fireman and engineer." "No bell was being rung nor whistle blown during the time."

We add to the foregoing statement the

testimony of the plaintiff, E. H. Wininger, as follows: "That fence (inclosing railroad yards) has been kept temporarily up all the while, but has always had gaps through the wire admitting the passage of persons. The wire is lowered and raised so as to go through there, and people cross there all the time. There are four well-defined passageways between Crahart street and Garnet street that have been constantly used up to the time of this accident." The witness testified to walking between the second and third tracks until he reached the first opening between the cars, and said: "When we got to the open space there between the cars, and it was the first opening we came to, there was no signal of any kind to indicate that the engine was going to move the string of cars. There was no ringing of the bell or blowing of the whistle. There was no signal of any character or kind given to warn any one that the train was about to move. There was no signal given up to the time of the accident. In crossing this track here, she and I started across the track— that is, the little girl, Halys, and myself— and she was possibly a little behind me. I had let her go with me, and had led her along up the track there for a while, and her nature is to want to be free, and she said, 'Papa, let me go,' and I did so. She said, 'Papa, let me go. I can get along all right without you holding my hand.' Just before we started across here—we started across, and I was possibly a step or a step and a half ahead of her. She was on my left, and, expecting nothing to happen, I did not have my eye on her directly all the time; but when this noise came down the string of cars—that is, the noise of the cars being hit by the engine—the noise of the cars being hit together by the engine seemed to excite her, and she stepped quickly about to the south rail of the middle siding and started to spring and slipped back over this south rail of the middle siding. She slipped to the north side of the south rail of the middle siding, and I started to grab her, but before I could get hold of her the wheel had passed over the foot and limb. I grabbed the child, but it was too late. The accident had already occurred, and her leg and foot were cut off. I took the child in my arms and some way got on the north side of the track. There is a space there that I know nothing about. There is a little space there from the time I grabbed the child. The next thing I knew I was on the north side of the track, facing towards home, with the child in my arms." The court then continues as follows: "We have omitted all the facts that are adverse to plaintiff's claim, and have stated, as we believe, the view of the evidence most favorable to the plaintiff."

In Lee v. Railroad Co., 89 Tex. 583, 36 S. W. 63, this court said: "Negligence, whether of the plaintiff or defendant, is generally a question of fact and becomes a question of law to be decided by the court only when the act done is a violation of some law, or when the facts are undisputed and admit of but one inference regarding the care of the party in doing the act in question; in other words, to authorize the court to take the question from the jury, the evidence must be of such character that there is no room for ordinary minds to differ as to the conclusion to be drawn from it. Railway v. Kane, 69 Md. 11, 13 Atl. 387, 9 Am. St. Rep. 395; Baltimore & O. R. Co. v. Griffith, 159 U. S. 603, 16 Sup. Ct. 105, 40 L. Ed. 274; Railway v. Ives, 144 U. S. 417, 12 Sup. Ct. 679, 36 L. Ed. 485; Railway v. Gasscamp, 69 Tex. 547, 7 S. W. 227; Chatham v. Jones, 69 Tex. 746, 7 S. W. 600. The test there laid down has been frequently approved and reiterated by this court. That test must be applied in determining whether the Court of Civil Appeals had authority in this case to render this judgment."

The Supreme Court then further holds: "The evidence is amply sufficient to authorize a conclusion that the yards were constantly used by persons to pass from one side of the track and yards to the other, and that the school buildings and churches were on the south side. Such constant use was sufficient to charge the railroad company with notice thereof and to impose on its employés the duty to use ordinary care to prevent injury to such persons as might be passing through the yards. The evidence would justify the conclusion that the father and child were in this instance attempting to cross the track on their way to church or Sunday school. They would have crossed at Garnet street, but that was blocked by a train. That in passing over the third (north) track going south, the purpose to cross the yards was manifested, and at this point the conductor of the train which caused the injury saw them, and must have known, from the direction in which they were going, that they would probably cross the second track at the first opening. He could have seen the man and child from the time they crossed the third track until he caused the cars to move against those standing on the second track. The jury were authorized to conclude that he did see them and knew their purpose, and, without giving notice, he caused the train under his control to move back against the car which caused the injury. The evidence would support a conclusion that the conductor was negligent in failing to see that no one was in position to be injured by the movement of the cars. The evidence would warrant a jury in finding that the failure to give any warning signal of the intended movement of the train constituted negligence on his part, which caused the injury to the child. There is evidence which controverts some of the facts stated, from which a jury might draw different conclusions, and nothing said by us shall be re-

garded as passing upon the evidence as a whole. The evidence showed such use of the yards in question as required of the employés of the railroad company to use ordinary care to discover any persons who might be using the yards, and the conductor, knowing of the presence of the father and child in the yards, was required by the law to give notice of the movement of the cars. T. & P. Ry. Co. v. Watkins, 88 Tex. 25, 29 S. W. 232. It would be superfluous to cite other authorities. The case of Blossom Oil Co. v. Poteet (Sup.) 136 S. W. 432 [35 L. R. A. (N. S.) 449], rests upon different facts, and was controlled by different principles of law. In that case there was no act of any employé of the oil company that caused the injury; liability was predicated upon the negligence of the employés of the company in permitting the young child to remain in the mill and to get into the place of danger. This court held that the fact that the child was with the father and mother relieved the company from any obligation to care for the child. In this case the father was caring for the child, which was not injured by any act of hers, but the negligent acts of the servants of the railroad company. If the father had been injured instead of the child, he could have recovered. The cases are wholly dissimilar."

Our former opinion is therefore here vacated and held for naught, and appellant's said first assignment, complaining that the trial court erred in not giving appellant's requested peremptory instruction, is here disallowed and overruled.

[2] Appellant, under its second assignment of error, complains of the third paragraph of the charge of the court, wherein the jury is instructed as follows: "It is the duty of the employés of a railway company, operating its trains, to use ordinary care to discover and avoid injuring persons who may be upon or near its track. The degree of such care being such as a person of ordinary prudence and caution would ordinarily exercise under the circumstances, and varying as the known probabilities of danger may vary along the different portions of the route over which such trains are run, and a failure to use such care by its employés, is negligence on the part of such company for which it is liable in damages for an injury resulting from such negligence, unless such liability is defeated by contributory negligence on the part of the person injured"—contending that it was not the duty of appellant's employés operating its train to use any care to discover persons near its tracks on the occasion in question, because the accident did not happen at a place which was public to that extent which would require train operatives to keep a lookout for persons near the track and under the conditions existing at the time of the accident; that it was not the duty of the employés of the defendant to observe the movements of plaintiff and her father while they were near the track, as

they were then in no danger. In this contention we cannot concur, believing it was the duty of appellant's employés, in charge of its train and cars moving upon the yards at the time, to use ordinary care to avoid injuring appellee and her father, whose presence the evidence shows was known to said employés, and that this duty would obtain, even in favor of a trespasser, and much stronger in favor of appellee and her father, whom we hold, as shown by the evidence, to have been licensees on appellant's switchyards and railroad track. We find no error in the charge complained of and the assignment is overruled. Texas & Pacific Railway Co. v. Phillips, 37 S. W. 620.

[3] Nor do we think there is any error shown under appellant's third assignment of error, complaining of the third paragraph of the court's charge, in instructing the jury that it was the duty of appellant's employés operating its trains to use ordinary care to discover and avoid injuring persons who might be upon or near its track, contending that no issue was raised by the evidence justifying such a charge. We think, however, it being shown by the evidence that the yards and track were constantly used by persons to pass from one side of the track and yards to the other, that such constant use was sufficient to charge the railroad company with notice thereof, and to impose on its employés the duty to use ordinary care to prevent injury to such persons as might be passing through the yards. The evidence would justify the conclusion that appellee and her father were in this instance attempting to cross the track on their way to church or Sunday school. We therefore conclude that the charge complained of was properly given, and that the assignment should be overruled.

[4] Appellant's fourth assignment of error complains of the fourth, fifth, and seventh sections of the court's charge on the ground that the court gave undue emphasis to the instruction that the jury should not find plaintiff guilty of contributory negligence unless they should find that she was possessed of sufficient intelligence to know and appreciate the danger of crossing under or between the cars while switching was being done, by unduly and unnecessarily repeating said instruction; it appearing from an inspection of the charge that one of the instructions complained of by appellant being a definition of ordinary care, the other a definition of contributory negligence, and the third a charge submitting to the jury the issue of contributory negligence as applied to the facts of this case, we are of the opinion that the court did not err in each of said paragraphs in instructing the jury as complained of in said assignment, and that such instruction was not an unnecessary repetition of the correct legal proposition that the plaintiff could not be guilty of contributory negligence unless the jury should find that

she was possessed of sufficient intelligence to know and appreciate her danger. The said fourth paragraph of the court's charge, which is a definition of ordinary care, and in our opinion is properly qualified, is as follows: "This rule of law, however, cannot be applied to the acts and conduct of plaintiff, Halys Wininger, unless you believe from the evidence that she was, at the time of her injury, possessed of sufficient intelligence to know and appreciate the danger of crossing under or between the cars while switching was being done." In the fifth paragraph the court defines contributory negligence with a similar qualification. In the seventh paragraph the court submits to the jury the issue of contributory negligence on the part of the appellee, and properly submits said issue as applied to an infant of her years. We are further inclined to the opinion that, in view of the tender years of appellee (five years and eight months), the court would have been justified in instructing the jury, as a matter of law, that appellee was not guilty of contributory negligence, and that issue was not raised by the evidence. There is no merit in the assignment, and it is overruled. G. C. & S. F. Ry. Co. v. Coleman, 51 Tex. Civ. App. 415, 112 S. W. 693; Ollis v. H. E. & W. T. Ry. Co., 31 Tex. Civ. App. 601, 73 S. W. 30; Evansich v. G. C. & S. F. Ry. Co., 57 Tex. 126, 44 Am. Rep. 586; H. & T. C. Ry. Co. v. Simpson, 60 Tex. 103; Freeman v. Carter, 81 S. W. 81; Cook v. Direct Navigation Co., 76 Tex. 358, 13 S. W. 475, 18 Am. St. Rep. 52; T. & P. Ry. Co. v. Phillips, 91 Tex. 281, 42 S. W. 852; T. & P. Ry. Co. v. Fletcher, 6 Tex. Civ. App. 736, 26 S. W. 446; T. & N. O. Ry. Co. v. Brouillette, 130 S. W. 886; M. C. Ry. Co. v. Rodriguez, 133 S. W. 690; 1 Thompson on Negligence, § 310.

[5] Appellant, under its fifth assignment of error, complains of the same portion of the same instruction referred to in the foregoing assignment, and contained in sections 4, 5, and 7 of the court's charge, on the ground that the petition, upon its face, raised the issue of contributory negligence, alleging that appellee was a child of tender years, being only five years of age, without sufficient judgment and discretion to understand the danger and peril of attempting to cross defendant's said track, and that the burden was on her to establish these allegations in support of which she had offered no testimony, and further complains that, although appellee was on the witness stand for the purpose of exhibiting her injured limb to the jury, her counsel did not ask her any questions in order to demonstrate her intelligence and ability to appreciate her danger at the time of the accident. We are of the opinion that the assignment is without merit; the evidence showing, without contradiction, that appellee at the time of her injury was less than six years old; that she had never attended school, and was too small to go to school at the time, and had never more than

once or twice made the trip from her home to town or town to her home alone. In the case of H. E. & W. T. Ry. Co. v. Adama, 44 Tex. Civ. App. 293, 98 S. W. 224, where recovery was sought for injuries to a seven year old child, in response to a similar suggestion as here made, the court said: "In the case before us, if it could not be held that Naomi's tender age conclusively placed her in the category of those incapable of contributory negligence, it is certainly true that the issue was in the case, and that the possession of that discretion on her part was a thing to be shown by defendant." Which holding we here commend and hold to be applicable to the facts of this case.

[6] In this connection, we note the statement of appellant, in its assignment, to the effect that appellee was placed on the witness stand, and that her counsel did not ask her any questions in order to test or demonstrate her intelligence and ability to appreciate her danger at the time of the accident, and feel constrained to remark that this omission on the part of appellee's counsel could easily have been remedied by counsel for appellant interrogating the witness, if, notwithstanding her tender years, upon her being offered on the witness stand, he had cause to believe she had such unusual intelligence and ability to appreciate her danger at the time of the accident as would make her capable of contributory negligence. The assignment is overruled.

[7] Under its sixth assignment of error, appellant complains of the sixth paragraph of the court's charge, which is as follows: "Bearing in mind the foregoing definitions and instructions, if you believe, from a preponderance of the evidence, that, before and at the time plaintiff received the injuries complained of in her petition, it was the custom of the people residing in the northeastern part of the town of Clarendon to cross the tracks of the defendant at or near the point of the accident, and that paths and places of entry had been made for that purpose so as to make the same a common passageway for pedestrians across defendant's right of way, tracks, and yard at said point, and that such custom and such use of said paths and passageways was with the knowledge, consent, and acquiescence of the defendant company, and that, in an attempt to cross over defendant's track at an opening between cars, the said cars were, by defendant's employés, and without the exercise of ordinary care on their part, suddenly moved backwards and towards the plaintiff, without a signal or warning of any kind to her, and that, before she could escape from her then position of peril, she received her injuries in the manner and form complained of in her petition, or if you believe from the evidence that the defendant's conductor and brakeman, or either of them, knew of the presence of plaintiff and her father before

said accident, and knew, or had reason to believe, that they would probably undertake to cross over said track and between the cars, and said employés failed to exercise ordinary care in moving said cars, to prevent the accident, and you further find that such act or omission of defendant's said employés was negligence, as hereinbefore defined, and that such negligence was the proximate cause of plaintiff's injuries, then you will find for the plaintiff, unless you find that she was guilty of contributory negligence under the instructions herein given you." Contending that the language employed by the court indicated to the jury that appellee was in a position of peril at the time defendant's employés started to move the train, and that there is no evidence to sustain such a charge, and no evidence to show that appellant knew of appellee's being in a position of peril any time until after the accident, and because said charge was upon the weight of the evidence, we are of the opinion that the charge complained of was warranted by the evidence.

E. H. Wininger testified, in substance, that, at the time he saw the conductor and brakeman and passed down between the tracks, the cars were not in motion, but were standing still; that when they came to the opening in question, which was six or eight feet in width, they started to cross through it, and that no signal of any kind was given to indicate that the cars were to be moved; that, in going across the track, he was a step or two ahead of the child, and that, as the string of cars started to move, the noise seemed to excite the appellee, and she stepped quickly about to the south rail of the track and started to spring and slipped back over the south rail, and that he started to grab her, but before he could do so her leg and foot had been cut off. And again that at the time he and appellee intended to cross this track, the cars were standing still, and there were no engines attached to them that he knew of.

We are further of the opinion that the evidence conclusively showed that the employés of appellant had knowledge of the presence of appellee and her father on the tracks, and that they were negligent in failing to keep an efficient lookout and in failing to give signals of warning that the cars were about to be moved. The evidence shows that the conductor was standing on the north side of the string of cars in controversy, superintending the movement of the cars. He testified, in part, as follows: "I knew the little girl and her father were on the right of way of the Denver about four or five minutes before the accident. I saw them coming along the track. I was standing near where the coupling was being made at the time of the accident. I probably could have seen them start towards the cars if I had been looking that way, but my duties were in the opposite direction, and I was looking towards the engine, giving signals to make the coupling. I was on the north side of the train at the time of the accident, and I was on the same side of the train with the girl and her father when I last saw them walking along the track. They walked along the north side of the track, the same side that I was on. I saw Mr. Wininger and his two little girls going in a west or north direction. I saw him and the two little girls in between the passing track and No. 2 track and going south—no, north, I meant to say (west according to the directions adopted by counsel for appellant and ourselves). That was four or five minutes before the accident. I think it took them four minutes to get up to where the accident happened. I was there all the time and after they passed me, and never saw them until I heard the scream. I don't remember turning around before that and looking in their direction. When I turned I saw Mr. Wininger in a stooped position with the little girl in his arms, and the other child was close by them jumping up and down. At the same time (i. e., the time the child screamed), I saw a man come out close to her in a stooped position as though he came out from under the car. I saw a man moving very close to a car in a stooped position with a child in his arms. I first saw the appellee and her father on the right of way close to the caboose between track No. 2 and No. 3. The little girl was four or five or six feet behind her father when I first saw them." The evidence also showed that the public crossing across appellant's track on Garnet street was blocked by the cars in controversy, and that said fact was known to the conductor, who gave the signals for the movement of the train, and who had seen appellee and her father walking along the right of way near said cars. We are therefore of the opinion that he was charged with the knowledge and fact that they might attempt to cross said cars at the first opening between the same, and, in attempting to do so, would be in a position of danger and peril, and that it was his duty to keep a lookout in that direction before giving a signal for the movement of said cars. The assignment is overruled.

[8] Appellant, under its seventh assignment of error, contends that there was no testimony whatever tending to show that the use of defendant's yards by the public was known to any representative of the company who had authority to bind the defendant by reason of such knowledge, and for that reason objects to that portion of section 6 of the court's charge to the effect that, if the jury believed, from a preponderance of the evidence, that, before and at the time the plaintiff received the injuries complained of, it was the custom of the people residing in the northeastern part of the town of Claren-

don to cross the tracks of the defendant at or near the place of the accident, and that paths and places of entry had been made for that purpose so as to make the same a common passageway for pedestrians across defendant's right of way, tracks, and yards at said point, and that such custom and such use of said paths and passageway was, with the knowledge and consent and acquiescence of the defendant company, etc., we are of the opinion, as held by the Supreme Court in this case, that such constant use was sufficient to charge the railroad company with notice thereof, and to impose on its employés the duty to use ordinary care to prevent injury to such persons as might be passing through the yards, and that the evidence amply warranted giving the instruction objected to. Finding no merit in the assignment, it is overruled.

[9] The proposition submitted under appellant's eighth assignment of error contains three separate and distinct propositions of law and is in violation of the rule governing the preparation of briefs, prescribed for the government of this court. The distinct propositions submitted in said assignment are as follows: First. That there was no evidence as to appellee's earning capacity, and the court erred in submitting said issue to the jury. Second. There was no evidence as to appellee's physical or mental suffering, and the court erred in submitting this issue to the jury. Third. That the tenth paragraph of the court's charge did not restrict appellee's recovery for her losses until after she should arrive at the age of 21 years. Rules for the Courts of Civil Appeals, No. 32 (142 S. W. xiii).

[10] If this assignment, however, be considered, we are of the opinion that the same does not require a reversal of this case, the evidence showing the appellee was an infant of tender years, but sound, healthy, and a well developed child, and to have entirely lost her right foot, and we think the jury were entitled to consider the question of her lost earning capacity, without direct and specific proof thereof.

[11] Again we think the testimony was abundantly sufficient to raise the issue of mental and physical suffering. E. H. Wininger testified that the wheel passed over appellee's limb some distance above the ankle, and that it was very badly mangled and the ankle partly crushed; that the leg was not cut squarely off, but there were a few strips of skin, and maybe some ligament, but it was practically cut in two and completely crushed; that her limb was amputated about halfway between her ankle and knee, and that the leg which had been amputated does not develop like the other, and that, as the child grows older, that limb gets smaller than the one which was not injured and on which she walks mainly, and that there was, at the time of the trial, a considerable dif-

ference in their size—a difference at least of one-fourth as to their comparative development; that she remained in bed something like a week after the amputation, and that the limb has caused her considerable trouble after the amputation, and that he knew from her actions and demeanor that she suffered. Dr. E. F. Ham, one of the surgeons by whom the foot was amputated, testified that he found her foot crushed to a mass, and that it was bleeding and simply crushed to a pulp, and that the child was suffering and cried, and that he administered an anæsthetic to relieve the pain of the amputated foot, and that, after the amputation, the child was nervous, and that he had noticed since she was nervous; that the amputation would retard the developments of the injured limb, and that there is always more or less inconvenience in having to care for a limb where a part of it was gone. He also testified that all persons with an amputated limb felt sensations of pain in the amputated member. The paragraph of the charge complained of expressly limits appellee's recovery for diminished earning capacity to losses after she should arrive at 21 years of age. The assignment is without merit and is therefore overruled.

[12] Under its ninth assignment, appellant complains of the refusal of the court to give the following charge: "Gentlemen of the jury, if you believe from the evidence that the act of the plaintiff, Halys Wininger, in going between or under the cars of defendant in the manner shown by the evidence, was induced and caused by her father, and that, but for such act of her father in causing her to do so, the accident would not have occurred, then you will find in favor of the defendant." It is to be noted that the charge requested does not require the jury to find that the act of her father should be the sole cause of her injury, and we are of the opinion that the charge refused was in effect an attempt to impute to the appellee such contributory negligence as the jury might find occurred on the part of her father, which the law does not permit. The charge was properly refused.

[13] Appellant, under its tenth assignment, complains of the action of the court in refusing to give its special charge No. 5, wherein the jury were instructed that, if they believed from the evidence that there was open to appellee, leading on in the direction she and her father were going just before they started to cross defendant's train, another way, and that such other way was a safe way, and that appellee voluntarily chose the unsafe way, she would be guilty of negligence, and that, if such negligence contributed to her injury, she could not recover. The vice in the charge in question, in our opinion, is that it would have the effect to hold appellee responsible for contributory negligence, notwithstanding her tender years and without inquiry as to her discretion and

mental capacity to select between a safe and a dangerous way.

[14] We think the charge further erroneous in that it assumes that appellee attempted to cross defendant's train, when the evidence shows that she was crossing through an opening between cars standing upon the side track, which were no part of the train which caused her injury. The assignment is therefore overruled.

[15] Appellant, under its eleventh assignment of error, complains of the action of the court in refusing to give its requested special charge to the effect that there was no evidence of knowledge on the part of appellant of its yards and switch grounds, in particular the place where the accident occurred, being used by the public so as to make the same a public way by habitual use. We are of the opinion that this assignment is without merit, and that the evidence is amply sufficient to authorize the conclusion that the yards were constantly used by persons passing over the same within the observation and knowledge of appellant, through its agents and employés, and that it was the duty of appellant to take notice of such customary and continued use of its property by the public. We are of the opinion that the proposition requested to be submitted in appellant's eleventh special charge, the refusal of which is complained of under its twelfth assignment, was fully covered by the general charge of the court, and that there was no error on the part of the court, in refusing to give the same.

[16] Appellant, under its thirteenth and fourteenth assignments of error, insists that this case should be reversed because of certain language used by counsel for appellee in making the closing argument to the jury. The language complained of, as shown by the bill of exceptions, is as follows: "Gentlemen of the jury, they (meaning the attorneys for defendant) make me tired in talking about sympathy for this little girl (pointing to the plaintiff). Oh, yes, I wonder how about the bondholders and coupon clippers that own this road." While the language thus used by appellee's counsel was improper in that it related to matters outside of the record, it may find some extenuation in the fact that, as disclosed in the oral argument of this phase of the case, and by the bill of exception, the matter of sympathy appears to have been introduced into the discussion of the case by counsel for appellant, who may have thought it incumbent upon him as a kind-hearted man to express to the jury his feelings of sympathy for an unfortunate little girl (and the same were no doubt creditable to him), but their expression did not relate to any matter in the record, and may have been viewed by opposing counsel as in a way intended to conciliate favor with the jury for counsel's client, to which he was at liberty and in a manner invited to reply, which he appears to have done by first stating that such expressions, coming from opposing counsel, made him tired, and then by indulging the inquiry as to the owners of the road. His description of these gentlemen as "coupon clippers" and "bondholders" may have been unfortunate and calculated to inflame the minds of some jurors in some localities, but as stated by Judge Stayton in the case of I. & G. N. Railway Co. v. Irvine, 64 Tex. 535: "The use of improper language or course of argument by adverse counsel within itself furnishes no sufficient reason for reversing a judgment, and it is only in cases in which a preponderance of the evidence seems to be against the verdict, or in cases in which the verdict seems excessive, and there is reason to believe that the verdict may have been affected by such course of conduct, that it becomes a ground for reversal."

[17] And in this instance we are unable to hold that the verdict rendered is either excessive or against the preponderance of the evidence to the extent that it can only be accounted for by assuming that the minds of the jury were inflamed and prejudiced against appellant by the language complained of, as in our opinion the verdict is warranted by the evidence, and is not excessive in amount. Much larger verdicts have been sustained by the courts of this state for similar injuries. I. & G. N. Railway Co. v. Sandlin, 57 Tex. Civ. App. 151, 122 S. W. 60; Houston B. & T. Ry. Co. v. O'Leary, 136 S. W. 601; M., K. & T. Ry. Co. v. Nesbit, 43 Tex. Civ. App. 630, 97 S. W. 825.

Appellant's fifteenth assignment of error presents no new matter for our consideration. The questions presented thereunder having been heretofore considered, the assignment is overruled.

Finding no reversible error presented under appellant's assignments, or either of them, we conclude that there is no error in the judgment rendered below, and that the same should be in all things affirmed, and it is accordingly so ordered.