## WESTERN UNION TELEGRAPH CO. v. TWEED.

(Court of Civil Appeals of Texas. Dallas. May 27, 1911. Rehearing Denied June 17, 1911.)

1. EVIDENCE (§ 131*)—SIMILARITY OF CONDITIONS—CAPACITY OF INSANE PERSONS.

Where it was claimed that plaintiff's injuries resulted in a form of insanity known as melancholia, it was error to permit a physician who was superintendent of an insane asylum to state the capacities of patients in the asylum with reference to their ability to care for themselves and perform various kinds of work, where his testimony was not limited to patients suffering from melancholia.

[Ed. Note.—For other cases, see Evidence, Dec. Dig. § 131.*]

2. WITNESSES (§ 318*)—CREDIBILITY OF EXPERTS—REPUTATION OF UNIMPEACHED WITNESS.

Where the capacity and credibility of an expert had not been attacked, evidence tending to support his character and capacity was inadmissible.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1084–1086; Dec. Dig. § 318.*]

3. APPEAL AND ERROR (§ 237*)—REVIEW OF EVIDENCE—MOTION TO STRIKE—NECESSITY.

Where defendant persistently objected to the introduction of evidence, a motion to strike it out after its introduction over his objection

was not essential to entitle him to review the ruling on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 237;* Trial, Cent. Dig. § 242.]

4. EVIDENCE (§ 472*)—CONCLUSION OF WITNESS.

Where, in an action for injuries to a lineman by the breaking of a pole, defendant pleaded assumed risk and contributory negligence, in that plaintiff violated a rule forbidding linemen to fasten themselves to poles by belts, it was error to permit a witness to testify over defendant's objection that it was not dangerous for a lineman to go on a pole and use a safety belt on construction work after he had heard the foreman say it "was all right."

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2186–2195; Dec. Dig. § 472.*]

5. MASTER AND SERVANT (§§ 288, 289*)—INJURIES TO SERVANT—TELEGRAPH LINEMEN—ASSUMED RISK — CONTRIBUTORY NEGLIGENCE.

In an action for injuries to a telegraph lineman by the fall of a defective pole on which he was working, whether he assumed the risk or was negligent in going on the pole without inspecting it himself, as required by a rule of the company, after he had been informed by his foreman that it was all right, held for the jury.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. §§ 288, 289.*]

6. MASTER AND SERVANT (§ 289*)—METHODS OF WORK — ABROGATION — NONUSE—QUESTION FOR JURY.

In an action for injuries to a lineman by the fall of a pole on which he was working, and to which he had attached himself by a safety belt in violation of the rule prohibiting the use of such belts, whether the rule had been impliedly abrogated by customary violation held for the jury.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 289.*]

7. MASTER AND SERVANT (§ 238*)—INJURIES TO SERVANT—TELEGRAPH LINEMEN—SECURITY PRECAUTIONS — CONTRIBUTORY NEGLIGENCE.

Plaintiff, a telegraph lineman, was injured by the fall of a defective pole on which he was working. Before ascending such poles, it was customary to make them secure by the attachment of guy wires, and it was plaintiff's duty to adjust a guy wire to the pole before ascending it; he having been furnished with the proper appliances for that purpose. If guy wires had been properly attached, there would have been practically no possible chance for the pole to fall. Held, that plaintiff's failure to attach such wires was contributory negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 747; Dec. Dig. § 238.*]

8. DAMAGES (§ 48*)—MENTAL SUFFERING—INSANE PERSONS.

Where, in an action for injuries, it was claimed that plaintiff had been rendered insane by his injuries, he was not entitled to recover for mental suffering.

[Ed. Note.—For other cases, see Damages, Dec. Dig. § 48.*]

9. TRIAL (§ 304*)—JURORS—MISCONDUCT.

Where jurors ascertained pending the trial that they were under the surveillance of a detective acting for defendant, the act of some of them in inviting the detective to go into a saloon with them and drink intoxicating liquor, and there engage him in conversation about the case, was improper, and merited suitable punishment.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 725–727; Dec. Dig. § 304.*]

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Action by E. A. Tweed against the Western Union Telegraph Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

W. J. J. Smith and N. L. Lindsley, for appellant. Carden, Starling, Carden & Hemphill, for appellee.

TALBOT, J. E. A. Tweed, suing by his father and next friend, M. D. Tweed, brought this suit against the appellant for damages for personal injuries alleged to have been sustained by him on or about the 16th day of September, 1907, while he was engaged for the appellant in doing certain work upon a telegraph pole in the line of his duty. It is alleged that the plaintiff, E. A. Tweed, is an inhabitant and citizen of the state of Kentucky, and that the defendant, the Western Union Telegraph Company, is a corporation with an office and local agent in Dallas county, Tex.; that prior to and since the above-mentioned date the defendant owned and operated a system of telegraph lines in various parts of the state of Texas, including Galveston county; that on said date plaintiff was in the employ of defendant in the capacity of lineman, and that, among other things, it became his duty to assist in taking down the wires from certain of defendant's poles, and transferring them to other poles nearby belonging to defendant; that, while plaintiff was upon a pole at work in the discharge of his duties, said pole broke and fell to the ground, carrying plaintiff with it, seriously injuring his head and other parts of his body and permanently impairing his mind and memory, so that as a result of said injuries his mind has become and is unsound. It is further alleged that the defendant, its agents, servants, and employés, were guilty of negligence, in that they failed to exercise ordinary care to furnish plaintiff a reasonably safe place to work, and in that they required him to work upon a pole which was old, worn-out, rotten, decayed, and dangerous, and in that his duties required that he should work on said pole, and in that defendant and its agents knew, or by the exercise of ordinary care could have known prior to said time, that said pole was in said condition, and in that they failed to warn or notify, and failed to exercise ordinary care to warn or notify, plaintiff of the dangerous and unsafe condition of said pole, and in that defendant and its agents failed to inspect and failed to exercise ordinary care to make a reasonably sufficient inspection of said pole prior to the time when plaintiff was injured, and in that they did not take any precautions and did not exercise ordinary care to protect plaintiff and to prevent said pole from breaking and falling, and in that they failed to

exercise ordinary care to furnish a guy wire or guy wires and clamps which were reasonably safe, but furnished a guy wire or guy wires and clamps which were unsafe, dangerous, old, worn out, and not of sufficient strength or proper material to do the work safely, as was necessary to be done by them, and in that said clamps and guy wires were so placed and put as that the same were dangerous and unsafe and did not perform the work intended to be performed by them in a reasonably safe way, and in that said guy wire or guy wires pulled loose and separated and came apart, and in that said pole and said clamps and guy wires were so constructed and so put up that said pole was not supported, but that same was caused and allowed to break off and to fall, and that by reason of said various acts of negligence on the part of defendant, plaintiff's injuries directly and proximately resulted. Defendant answered by a general demurrer, general denial, pleas of assumed risk, and contributory negligence. The trial in the district court resulted in a verdict and judgment for $30,000 in favor of the plaintiff; and, defendant's motion for a new trial being overruled, it appealed.

[1] The assignments of error are very numerous and only such as we believe disclose reversible error, or for some reason should be mentioned, will be discussed. The fifth complains of the court's action in overruling defendant's motion to exclude the following testimony of Dr. C. M. Rosser: "Well, just roughly I would say that out of 1,000 patients [meaning at the Terrell Insane Asylum] not over 25 or 30 of them would not be able to take care of a call of nature. The balance of them would be able to do it, and that proportion of them who are able to do it go out on their daily walks with one attendant to take care of 50 of them at a time. Many of them spend their time in the reading ward and playing billiards. Many of them are expert billiard players. Probably 100 out of 1,000 keep up with the current literature of the day." And in allowing said witness in the same connection to testify: "A great majority of the farming is done by the patients [meaning the patients at the Terrell Insane Asylum]. The laundry and dairy are taken care of by the patients. They milk the cows and take care of the cows and of the milk; do the planting with an overseer. These are regular patients down there in the asylum. The trouble with them is they have either lowered their intelligence, or are twisted on certain points." This testimony was objected to on the grounds that it was irrelevant and immaterial, and not confined to the form of trouble complained of. We think the objections well taken. The record shows that this witness had testified that the plaintiff was suffering with a form of insanity known as melancholia, as a result, in his opinion, of the injuries charged to have been receiv-

ed through the negligence of the defendant, and should not have been permitted to state what percentage or proportion of the inmates of an insane asylum, maintained for all forms of insanity, had capacity or intelligence enough to do the things or character of work mentioned in his testimony when it did not appear that the patients referred to, and from which the percentage was drawn, were suffering with the particular form of insanity complained of by the plaintiff. As said by counsel for appellant, it might be that persons suffering from the form of insanity known as melancholia would have more intelligence and more capacity to work and earn money. It seems to us that the only fair criterion by which to measure the intelligence or capacity of the plaintiff to work and earn money, if he was suffering with the form of insanity known as melancholia, would be that capacity and intelligence which experience and observation teaches is possessed generally by those persons suffering with that particular form of insanity, and not that possessed by persons suffering with some other form of insanity. The capacity of these unfortunates, in the respect referred to, varies doubtless according to the form of the insanity with which they are suffering. The inference from the testimony admitted over the objections of the appellant is that a good many of the patients at the Terrell Insane Asylum are not capacitated to do anything; that their insanity wholly incapacitates them for any character of work or any sort of employment. That the jury may have regarded the plaintiff as being of the latter class may be indicated by the size of their verdict.

[2] We are also inclined to think that appellant's sixth assignment of error should be sustained. It would seem, as urged, that in the absence of any attack upon the credibility of the witness Rosser, or upon his professional standing, it was reversible error for the court to permit plaintiff to prove by the witness Carey on cross-examination that Rosser is accepted as an expert in the courthouse, and that Rosser had had experience in mental and nervous diseases, and not only that, but that he had had a number of cases and been in court. Such was, in substance, the character of the testimony of Dr. Carey; and Dr. Rosser had testified that in his opinion the plaintiff was of unsound mind, and that his condition would not improve, but was permanent. Mr. Rogers in his work on Expert Testimony, § 37, p. 85, states the rule to be that, after a witness has been adjudged competent by the court, his reputation can only be sustained after it has been impeached. See, also, Railway Co. v. Lane, 127 S. W. 1066, in which this rule is approved, and in which it is held "that, in the absence of any attack upon the skill or reputation of a medical witness, testimony as to his reputation as a physician would not be admissi-

ble." It is true that in this case it was sought to sustain the witness by the testimony of a farmer not skilled in medicine, but the rule as stated was unqualifiedly approved, and the fact that the sustaining witness was a farmer and unskilled in medicine was simply referred to as perhaps an additional reason for declaring the testimony objectionable in that case. And so in the case at bar, especially was the statement of the witness, Dr. Carey, to the effect that Dr. Rosser is accepted as an expert in the courthouse, objectionable. This statement was clearly calculated to give undue prominence to the testimony of Dr. Rosser and influence the jury to appellant's prejudice.

[3] That the appellant strenuously and persistently protested against the introduction of this testimony is manifest, we think, from the record, and no motion to strike it out, or further objection than was interposed, was necessary on the part of appellant in order to entitle it to a review of the trial court's ruling.

[4] We are of the opinion that the court erred in permitting the witness W. O. Cloud to testify over the objections of the defendant that there is no danger for a lineman to go up on a pole and use a safety belt on construction work after he has heard the foreman say it was all right. The defendant pleaded assumed risk and contributory negligence on the part of the plaintiff and specially a rule prohibiting its linemen from attaching themselves to a pole in the performance of their work by means of a belt; that for an employé to so attach himself to a pole was dangerous; that the plaintiff violated this rule, and in doing so was guilty of contributory negligence. Such a rule was introduced in evidence, and there was evidence to the effect that defendant's foreman made an inspection of the pole that fell with plaintiff and in the presence or hearing of plaintiff said it looked all right and that they could fasten to it; that after this plaintiff ascended the pole, strapped himself to it with a belt, and was carried to the ground with it when it fell. Whether there was danger in the situation in which the plaintiff placed himself was an important issue of fact which could not be established by the mere opinion and conclusion of the witness, and it was material error to permit him to state that, after appellant's foreman had examined the pole and announced that it looked all right, he did not think it was dangerous for the plaintiff to fasten himself to it with a belt. This statement was but an expression of the opinion and conclusion of the witness upon the matter to which it related, and its introduction in evidence an invasion of the province of the jury. It was allowing the witness to decide one of the very questions the jury were impaneled to determine from all the evidence in the case. We do not concur in the view that this testimony was admissible, because of previous questions asked by counsel for appellant. Nor do we think it admissible under the rule announced in the cases cited by counsel for appellee. Notwithstanding the statement of the foreman referred to, it was still a question for the jury whether it was dangerous for the plaintiff to attach himself to the pole with a belt, and whether an ordinarily prudent person would have done so under the circumstances.

The twenty-third assignment complains of the court's refusal to instruct the jury at appellant's request to return a verdict in its favor. The propositions contended for under this assignment are, in substance, (1) that no act of negligence pleaded by the plaintiff is supported by the evidence; (2) under the undisputed evidence the defendant was entitled to a peremptory instruction in its favor on the ground of assumed risk; (3) under the undisputed evidence the defendant was entitled to a peremptory instruction in its favor on the ground that plaintiff was guilty of contributory negligence. The following rules and warning of the defendant in writing and signed by the plaintiff, E. A. Tweed, August 16, 1907, were introduced in evidence: "Western Union Telegraph Company. To All Foremen and Linemen: Do not let go of the last wire when taking it off old poles; carry it until close to the ground, or, if too tight, use a rope to let it off. Do not climb poles without first testing them carefully, and if any are weak, call for assistance to hold the poles while working on them. Do not use a body belt to hold yourself on pole or arm when working on same."

Without undertaking to give it in detail, we think the evidence probably sufficient to warrant a finding that the defendant was guilty of negligence proximately causing injury to the plaintiff, and that the court properly submitted that issue to the jury. This issue it seems to us was raised by the testimony of the witnesses W. E. Smith and his wife, Mrs. Louise Smith, and we deem an elaboration of the question unnecessary. The case is distinguishable in its fact from Southwestern Tel. & Tel. Co. v. Tucker, 102 Tex. 224, 114 S. W. 790. It is contended that the evidence shows a violation of each of the above rules, and therefore the plaintiff assumed the risk of being injured as he was, or was thereby guilty of such negligence causing or proximately contributing to cause his injuries as precluded a recovery. With regard to the first rule mentioned, will say that the brief of appellant does not point out any direct evidence showing that the plaintiff had cut the last wire at the time the pole fell, and the inference from the facts and circumstances proved that he had is not conclusive.

[5] In reference to the second rule, it may be said that the evidence shows that defendant's foreman was present and inspected the pole in question just before the plaintiff went

upon it and announced that it looked all right and that they would fasten to it. The foreman, Webb, himself testified that it was his duty to inspect, and that he did inspect, the pole and pronounced it all right. Whether the plaintiff, under these circumstances, assumed the risk or was guilty of contributory negligence in going upon the pole without inspecting it himself, as enjoined upon him by the rule, was, we think, a question of fact for the jury.

[6] We are further of the opinion that it was a question of fact for the jury whether the rule not to use a body belt to hold a lineman on a pole or arm thereof when working on the same had been abrogated or was in force and effect. There was evidence to the effect that this rule had been and was being customarily violated. In Railway Co. v. Scott, 71 Tex. 709, 10 S. W. 300, 10 Am. St. Rep. 804, it is said: "Paper rules which are usually and customarily violated are presumed to be not intended for enforcement—not rules at all." To the same effect is Railway Co. v. Leighty, 32 S. W. 799.

[7] But it appears that in cutting and transferring the wires, as was being done by the plaintiff and his coemployés at the time the pole fell with him, it was necessary and was the custom to make secure the pole upon which the lineman was at work by attaching to the top of such pole one end of a cable wire called a guy wire and the other end of such wire to the bottom of the next pole. The purpose and effect of this wire is to prevent the pole from being broken and thrown to the ground by the force and strain put upon the telegraph wires on the opposite side of the guy wire when the wires to be removed are cut. The guy wire used to secure and hold erect the pole upon which plaintiff was at work was a spliced guy wire and was spliced with clamps. As shown by the testimony of the witnesses, clamps were made of metal with grooves in them through which the wires run, and that are fastened together with bolts and nuts, and the wire twisted around the main wire. When the wires and clamps are properly adjusted, the nuts are screwed down on the bolts, and the clamps thereby so tightened that the wires cannot slip. It further appears that it was the duty of the plaintiff to adjust the guy wire and clamps and tighten the bolts as designed, and that he had the implements in hand with which to perform this duty, and appellant contends, in effect, that the undisputed evidence shows that the plaintiff failed to perform this duty, and that as a proximate result of such failure the pole fell and he was injured. Therefore he was not entitled to recover, and a verdict should have been instructed for defendant or its motion for a new trial granted. We are inclined to agree with this contention. There is a mass of testimony bearing upon the question, and, after such a careful examination of it as we have been able to make, we have reached the conclusion that it shows without dispute that it was the plaintiff's duty to adjust the guy wire and clamps, tighten the bolts, and see that the splices were properly wrapped and made secure, and that he failed to do so; that, had the guy wire and clamps been properly adjusted and the splices made secure as it was plaintiff's duty to adjust and make them, there would have been practically no possible chance for the pole to fall. The plaintiff did not testify, and this is the effect of the uncontroverted testimony of the defendant's witnesses as we see it.

[8] It is assigned that the court erred in instructing the jury that in estimating the plaintiff's damages they could take into consideration the mental anguish he had suffered up to the time of the trial and would probably suffer in the future as a result of his injuries. The contention is, in effect, that there was no evidence of mental suffering; and, there being evidence that plaintiff was rendered insane by reason of his injuries, such suffering will not be inferred from the physical injury inflicted upon him. We think the charge, in unqualifiedly authorizing the jury to consider the mental anguish plaintiff may have suffered in consequence of his injuries, error. It is well settled that, when a person in normal condition receives a serious physical injury, the law will infer therefrom mental suffering, and no proof is required in such case of such suffering, but we do not understand that this rule applies if the condition of the person injured be not normal. No case deciding the precise question has been cited, and we are aware of none, but from the language used in Railway Co. v. Curry, 64 Tex. 85, it reasonably may be inferred that the Supreme Court was of the opinion that the rule was applicable only in cases where the injured party was sane during the period of such alleged suffering. In that case, after stating the rule with reference to physical injuries, it is said: "This is equally true as to mental suffering; for it is contrary to common experience and the laws of man's existence and nature that any *sane*, healthy, and robust person by physical injuries may be made a cripple for life in a manner affecting his health, comfort, or capacity, without mental pain resulting from the changed condition. (Italics ours.) No proof is required to be made of those things which every person is presumed to know, and, as it is not required that proof be made of a fact necessarily resulting from facts proved, then it is not necessary to allege the resulting fact, for it is understood to be averred by the averment of the facts from which it necessarily results." It does not seem to be contended that plaintiff's physical injuries were not of such a character as warrants the application of the rule announced in the case cited, and our view of the law is that, if the plaintiff was rendered insane as a result of his injuries, mental pain or suffering would not be inferred from said injuries; otherwise

it would. In the state of the evidence, as shown by the record before us, we think the trial court's charge should have conformed to these views. If plaintiff's mind was destroyed by reason of the injuries he received, such a result, we think, would be an element of his damage, instead of mental suffering.

The forty-fourth assignment asserts that the court erred in overruling the defendant's motion for a new trial based on the misconduct of the jury. As the judgment will be reversed and the cause remanded on other grounds, and the matters here complained of are not likely to occur on another trial, we deem it unnecessary to enter upon a lengthy discussion of this assignment. We will simply say that we regard the verdict of the jury excessive, and that it was in all probability the result of the jury's resentment of the appellant's conduct, which had come to their knowledge in employing a detective to watch them pending the trial with a view of detecting any misconduct on their part, and to see that their verdict was not affected by any undue or improper influence brought to bear upon them.

[9] We will further say we regard the conduct of the jurors who invited the detective to go into a saloon with them and take a drink of intoxicating liquor, and there engage him in a conversation about the case as highly improper and meriting suitable punishment.

There are a number of assignments which have not been discussed. They have, however, been examined with the conclusion reached that, except as they may conflict with the view expressed in this opinion, they disclose no reversible error.

For the errors indicated, the judgment is reversed and the cause remanded.