WICHITA FALLS TRACTION CO. v. BERRY et ux. (No. 8369.)*

(Court of Civil Appeals of Texas. Ft. Worth. May 13, 1916. On Rehearing, June 10, 1916.)

1. CARRIERS ⟷314(5)—PERSONAL INJURY—SUFFICIENCY OF PETITION.

A petition in an action for personal injury while alighting from a car, alleging negligence on the part of defendant and its employés in not providing a safe place to alight, that the step of the car was 3½ feet from the ground, that the box on which plaintiff stepped turned over because it was almost square and was placed directly under the step, and that defendant negligently permitted dirt to be washed away from the track under and near the step, and permitted her to step on the box without warning as to its unsafe condition, stated a cause of action.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1273, 1275, 1275½; Dec. Dig. ⟷314(5).]

2. CARRIERS ⟷320(28)—PERSONAL INJURY—QUESTION FOR JURY.

On the evidence in a passenger's action for personal injury while alighting from a car held that whether the defendant's employés knew that the box on which plaintiff stepped had been placed on the side of the car track when plaintiff alighted, or by the exercise of ordinary diligence could have known that the box was not a safe and suitable step to use in alighting, was for the jury.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1244; Dec. Dig. ⟷320(28).]

3. CARRIERS ⟷284(2)—PASSENGERS—ACTS OF THIRD PARTY—LIABILITY.

While a carrier is not ordinarily liable for the unauthorized acts of third parties, non-employés, it may become liable for negligence in permitting such acts to be done or the consequences thereof to continue, if knowledge has been brought to its servants.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1128–1129, 1132, 1173; Dec. Dig. ⟷284(2).]

4. APPEAL AND ERROR ⟷722(1)—ASSIGNMENT OF ERROR—SUFFICIENCY—RULES OF COURT.

An assignment of error in the main charge as more fully shown by the written objections thereto, made and filed after it had been submitted to opposing counsel and before the charge was read to the jury "as is more fully shown by defendant's bill of exception No. 2 which is here referred to and made a part thereof," in view of the absence of any bill of exceptions No. 2, eo nomine, in the transcript, did not comply with rules 25 and 26 for Courts of Civil Appeals (142 S. W. xii), prescribing the form and contents of assignments of error, and hence did not require consideration.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2990, 2994–2996; Dec. Dig. ⟷722(1).]

5. TRIAL ⟷85—RECEPTION OF EVIDENCE—EVIDENCE ADMISSIBLE IN PART—OBJECTION TO WHOLE.

Where a part of the testimony objected to as a whole was not subject to the alleged vice of being hearsay, the objection was ineffectual to reach any part of the evidence to which it might be pertinent.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 222–225; Dec. Dig. ⟷85.]

6. EVIDENCE ⟷314(1)—HEARSAY—RELATED FACTS.

In a passenger's action for personal injury while alighting from defendant's car when a box used for her to step upon overturned, testimony of a witness, who learned of the accident from his wife and thereby fixed the date of the accident with reference to the time when he saw a box on the side of the street, which he sometimes used to alight from the car and which he had used two days before he heard of the accident, that it was low and shaky, without showing that it was the same box as that used by the plaintiff, was not inadmissible as hearsay; since a witness may date a fact which he knows by relating it to the time when he heard another fact, and, in so doing, may state what the

fact heard was to inform the jury of his reason for observing and remembering facts about which he testifies from personal knowledge.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1168; Dec. Dig. ☞314(1).]

**7. CARRIERS ☞320(28)—PERSONAL INJURY—QUESTION FOR JURY.**

In a passenger's action for personal injury while alighting from a car, *held* on the evidence, that whether a box about which a witness testified was the same box used to assist plaintiff to alight was a question for the jury.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1244; Dec. Dig. ☞320(28).]

**8. DAMAGES ☞132(7)—EXCESSIVE DAMAGES—PERSONAL INJURIES.**

A verdict for $1,125 awarded to plaintiff, a woman of 40, who had previously done the cooking and household work for six people, for injury to her knee, hip, and back, tearing the ligaments, causing swelling and keeping her in bed for over two weeks resulting in a weakening of the leg and knee and pain after working and walking, was not excessive.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 378; Dec. Dig. ☞132(7).]

**9. APPEAL AND ERROR ☞1069(1)—HARMLESS ERROR—MISCONDUCT OF JURY.**

In a passenger's action for personal injury where it appeared that some members of the jury had been in court and heard the trial of another case against the same defendant, and that the attorney representing plaintiff had also represented the plaintiff in that case, that it was charged in the first case that plaintiff was feigning injury, and that there was testimony that plaintiff's counsel had stated that she was not hurt, the statement of at least one juror that he did not believe defendant had treated plaintiff's counsel right in the other trial, the statement of another juror that it made no difference what their verdict was as defendant would get a new trial on appeal, and the statement of another that he thought the defendant had framed up the first case to make the jury believe that plaintiff was not hurt, in view of the jurors' testimony that such remarks had no effect on the verdict, were not prejudicial to defendant.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4136; Dec. Dig. ☞1069(1).]

**On Rehearing.**

**10. CARRIERS ☞318(11)—PERSONAL INJURY—SUFFICIENCY OF EVIDENCE.**

Evidence in a passenger's action for personal injury while alighting from a street car *held* to sustain a finding that the defendant and its conductor knew that the box on which plaintiff stepped in alighting had been placed on the ground under the step.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1307, 1314; Dec. Dig. ☞318(11).]

**11. EVIDENCE ☞588—WEIGHT OF EVIDENCE—CREDIBILITY.**

A juror is not required to believe a witness, although he makes a plain statement of what is not impossible and is neither impeached or contradicted by direct evidence, but may discredit him on account of the manner of testifying and attendant circumstances.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2437; Dec. Dig. ☞588; Witnesses, Cent. Dig. § 1164.]

Appeal from District Court, Wichita County; E. W. Nicholson, Judge.

Action by C. W. Berry and wife against the Wichita Falls Traction Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

Huff, Martin & Bullington, of Wichita Falls, for appellant. W. F. Weeks, of Wichita Falls, for appellees.

BUCK, J. This suit was filed in the district court of Wichita county by C. W. Berry and wife against the Wichita Falls Traction Company, alleging damages in the sum of $5,000 for personal injuries to Mrs. Berry, alleged to have been sustained by her while alighting from one of the defendant's cars. At the time of the alleged injury, the car on which Mrs. Berry was riding was standing at a switch, awaiting another car. Mrs. Berry, in alighting from the car, stepped on a box which had been placed in position on the ground near the step a few minutes before by another passenger in order for a lady, who desired to board the car, to do so with greater safety and convenience. The box gave way, causing Mrs. Berry to fall, and she alleges that she received injuries in her knee, hip, and back therefrom. Plaintiff alleged negligence on the part of defendant and its employés in not providing a safe place for Mrs. Berry to alight in safety, the bottom step being some 3½ feet from the ground, and in failing to provide a safe means for her to alight. That the box turned over because of the fact that it was almost square and was not placed directly under the step by the conductor and that, at the direction of the conductor, Mrs. Berry stepped near the corner of the box, but, because of the ground being sloping, the box turned to one side, causing Mrs. Berry to fall. It was alleged further that defendant was negligent in permitting dirt to be washed away from said track and under and near the step where plaintiff alighted, and in permitting Mrs. Berry to step on the box without warning as to its insecure condition.

Defendant denied any liability because of the alleged injuries and specially averred that, if plaintiff was injured by the fall, such fall was caused through no neglect of defendant or its conductor; that the conductor did not know at the time plaintiff alighted from said car that said box had been placed near the step, and that it was guilty of no negligence because the conductor failed to warn Mrs. Berry of the presence or condition of said box, nor was it guilty of negligence because its conductor failed to know of the presence of said box and its condition.

The case was submitted, on special issues, and the jury found as follows:

(1) That the defendant company and its employés knew that said box had been placed on the side of the street car track at the point where plaintiff alighted from said car, at the time she did alight therefrom.

(2) That plaintiff fell while alighting from

said car by reason of stepping on said box, and was injured thereby.

(3) That defendant's employés were guilty of negligence in allowing the box mentioned to be placed alongside of its street car track and to be used by plaintiff to step on while alighting from its car.

(4) That defendant and its employés in the exercise of ordinary diligence should have known that said box was not a safe and suitable step for plaintiff to use while alighting from the car, and was guilty of negligence in permitting plaintiff to step on the box at the time she did, and that such negligence was the proximate cause of plaintiff's injuries.

(5) That the box in question was not suitable and safe as a step for plaintiff to use while alighting from said car.

(6) That plaintiff was not guilty of contributory negligence in stepping on the box, or in not stepping upon the center of said box.

(7) That $1,125 was the sum of money which would fairly and reasonably compensate plaintiffs for the injuries received by Mrs. Berry.

Judgment having been entered for plaintiffs in the sum found by the jury, the defendant appeals.

[1-3] We think the court properly overruled defendant's motion for a peremptory instruction, and that plaintiffs' petition showed a cause of action, and that whether or not the evidence sustained the allegations of negligence made therein was a question for the jury.

Appellant predicates its contention that it was not negligent principally upon the asserted ground that the conductor of the car in question did not know that the box upon which Mrs. Berry alighted was there, and did not know of its unsafe and unstable condition; but we are of the opinion that the evidence is sufficient to sustain the findings of the jury that the conductor did know, or should have known in the exercise of that high degree of care due a passenger, that said box had been placed near the track and immediately under and in front of the step prior to Mrs. Berry's stepping thereon, and that the box was not safe for the purposes and uses to which it was put. Mrs. Nettie Davis, a witness for defendant, testified, in part, as follows:

"I remember along about July 19, last, being out near what they call Field's Switch, between here and the factory district. I got on the street car Sunday morning before this lady, Mrs. Berry, got off; this street car stopped there at the switch, and I got on the car at the switch—I got on just before this lady got off. * * * Our friends were out to see us; Mr. Denton and his wife and I were going to the lake that day. I always got up that way without any box. Mr. Denton insisted upon putting a box there; the box was lying out in the street. He got it, and got it so that I could get up; that was an old box, rickety, and I stepped carefully right across the corner so that I would not fall. He went out in the street and picked up this box and set it down by the street car, just as a step for me to get up. I do not

187 S.W.—27

know whether the conductor had him to bring the box up or not. He brought the box up there and set it down just before I got on the car. My son got on the car after I did. * * * He (Denton) did not get the box before the car stopped. When the car stopped and he saw how high it was from the step down to the ground, he got the box; but I told him that he need not get it for I had gotten on the car that way. He did get it. I used it, but I was careful how I used it, for it was an old rickety thing. It was a dangerous box to step on, and my friend put it there, and I stepped right across the corner this way."

Lewis Davis, a witness for defendant, and the son of Mrs. Nettie Davis, testified in part as follows:

"I saw this lady as she stepped off of the car. The conductor had hold of her arm as she went to get off of the car. I do not know whether any one on the ground also had hold of her arm or not; I observed the conductor. * * * Job Denton brought the box there that my mother used to get upon the car. The box was a tolerably long box, an old, rickety box. I do not know as to the material that it was made out of; I never paid no attention to the box much. It was just an old rickety box, that is just about all that I know about it. * * * The box that Mr. Denton got was laying out there in the street. * * * He went a distance of 20 or 30 feet of where the car stopped to get the box. The reason that he went there and got the box was because that was a pretty high step. It was somewhere near 3½ feet from the ground to the step; it was a very high step for a lady to make. Mr. Denton got the box and moved it up there by the side of the car as soon as it came. * * * The conductor was standing there where he always stands when this fellow put that box there; right there on the back platform. The conductor helped my mother on, and then I got on. Job Denton and his wife also got on the car. * * * I saw the conductor take Mrs. Berry by the arm and assist her down on this box. * * * It had been several days before that that I had seen that box."

The conductor, O. Gibbs, another witness for defendant, testified in part as follows:

"I did not see the box before, until they had it up there. I seen it when she stepped off. I helped Mrs. Davis to get on, but I never noticed the box. I never noticed Mrs. Davis step upon this box and get on. I do not know what was to keep me from seeing it; I had hold of Mrs. Davis' arm helping her up. The box was right there; it was a good-sized box; it was what lard comes in. I guess that it was about two feet across on top. Two feet one way and about 2½ feet the other. I expect something like that. I did not see that box when Mrs. Davis stepped on it. I do not think that I am blind. I saw the box when Mrs. Berry stepped down on it. I was just as close to it in helping Mrs. Davis on as I was in helping Mrs. Berry off. But I was not looking down when Mrs. Davis was getting on. * * * With reference to when I first discovered the box, Mrs. Berry was in the car and I went to assist her down when I saw the box. Mrs. Berry was getting off when I first saw that box. I do not remember whether she was on the top step or on top of the car, or on the bottom step of the car when I saw the box. * * * There was nothing to keep me from examining that box to see what kind of a step I was putting my passengers down on."

Other testimony was introduced to the effect that a box, similar to the one used at the time of Mrs. Berry's alleged accident, had been frequently used for some time prior to this by passengers in boarding and alight-

ing from the car at this switch, and that the box was allowed to remain out in the street or at the side of the street, and that another box was used for the same purpose at the place of stoppage of the car coming from the other direction and in the same block; this box, so used by the passengers boarding or alighting from the car at this place, was left in full view where it could have been seen by the conductors and motormen in charge of the cars, and that it had been in an unstable and "rickety" condition for some time. We think the court was justified in submitting to the jury the question as to whether or not the defendant's employés knew that said box had been placed on the side of the street car track at the point where and at the time when plaintiff alighted from the car, and whether or not said employés knew, or could have known by the use of "ordinary diligence" (finding of jury, paragraph 4), that said box was not a safe and suitable step for plaintiff to use while alighting from the car, and that the finding by the jury favorable to plaintiff on both issues is supported by the evidence.

We do not think that the instant case presents a phase similar to that disclosed in the case of Railway Co. v. Phillips, 32 Tex. Civ. 238, 74 S. W. 793, cited by appellant. In the cited case, a passenger was killed while looking out of a window of a coach by his head coming in contact with the swinging gate of a stock pen belonging to the carrier, and the Court of Appeals for the Third District held that a charge tendered by the defendant, in effect instructing the jury that if the defendant company had fastened the gate with appliances reasonably sufficient to hold it, and that the gate was caused to swing loose by the act of some person other than an employé of defendant, and without the knowledge of defendant, that they should find for the defendant, was improperly refused. Nor do we think the facts shown in the instant case are analogous to those disclosed in the case of Cary v. Los Angeles Ry. Co., 157 Cal. 599, 108 Pac. 682, 27 L. R. A. (N. S.) 764, 21 Ann. Cas. 1329, in which a passenger seeking to recover for injuries received on account of the car starting while she was alighting therefrom, due to the act of a fellow passenger in ringing a start signal to the motorman, was denied a recovery. While a carrier is not ordinarily liable for the unauthorized acts, or the consequences which may flow from such acts, of third parties, nonemployés, yet it may become liable for negligence in permitting such acts to be done, or in permitting the consequences of such acts to remain or continue after knowledge has been brought to the carrier's servants. For instance, if a passenger should be injured by falling over baggage left in an aisle by another passenger, the carrier would not ordinarily be liable for injuries resulting therefrom, unless knowledge of the presence of the baggage in

the aisle was brought to or should be imputed to the servants of the carrier in charge of the train before the accident occurred. Miscreants place an obstruction on the track which causes a derailment; the liability vel non of the carrier for any damages sustained would depend on whether or not the engineer or fireman was guilty of negligence in failing to discover the obstruction in time to have prevented the accident, or in failing to use every reasonable means at their command to prevent the accident after such discovery. In the instant case, by a large preponderance of evidence, the box used as a step at the time of plaintiff's alighting from the car was shown to be "rickety" and unsafe. Defendant's own witnesses testified to such condition. Mrs. Davis testified that she stepped on the corner of the box in boarding the car because she saw its rickety condition. The conductor is shown to have been on the back platform where he could have seen, and in the exercise of perhaps even ordinary care would have seen, the placing of the box by the witness Denton, and the condition of the box with reference to its being safe or not. The jury have found that he did in fact see it and know its condition, or should have done so in the exercise of that degree of care owing to plaintiff. Hence, we conclude that the court did not err in refusing to give the peremptory instruction requested, and appellant's first assignment is overruled.

[4] Appellant's second assignment is as follows:

"The court erred on the trial hereof, in his main charge to the jury, as more fully shown by the written objections to said charge made and filed with the court, after the same had been submitted to the opposing counsel and before the charge of the court had been read to the jury, as is more fully shown by defendant's bill of exception No. 2, and which is here referred to and made a part thereof."

We think that this assignment is too general and vague in meaning to require consideration by us, and does not comply with rules 25 and 26 for the government of Courts of Civil Appeals (142 S. W. xii). By reference to the transcript no "bill of exception No. 2," eo nomine, is to be found, but on page 19 is found "defendant's objection and exception to charge of the court," which concludes in the form of a bill of exception, and is probably the instrument to which reference is made in this assignment. Yet in this instrument are urged several objections to the charge, and neither the assignment nor the proposition thereunder points out specifically which one of the objections contained in the said instrument is relied on under the assignment. If, by grace, the so-called bill of exception itself should be taken as an assignment, it certainly is multifarious. But in any event, we do not think any error is disclosed, either in the assignment or the proposition thereunder; the latter, in effect, attacking the action of the court in submit-

ting to the jury special issues requiring findings as to whether or not the box had been placed with the knowledge of the defendant, or its employés, and whether or not the defendant was guilty of negligence in allowing the box to be placed along its street car track where passengers were being discharged. From the evidence quoted and referred to hereinabove, we hold that the issues were properly submitted to the jury. M., K. & T. Ry. Co. v. Redus, 55 Tex. Civ. App. 205, 118 S. W. 208 (writ denied); M., K. & T. Ry. Co. v. Dunbar, 57 Tex. Civ. App. 411, 122 S. W. 574 (writ denied); Freeman v. Kennerly, 151 S. W. 580; Ry. Co. v. Wininger, 151 S. W. 586; Railway Co. v. Davis, 4 Tex. Civ. App. 351, 23 S. W. 737; Railway Co. v. Kennedy, 12 Tex. Civ. App. 654, 35 S. W. 335; Blair v. Railway Co., 141 App. Div. 843, 126 N. Y. Supp. 466. In the last-cited case the street car company was held to be liable to a passenger injured while alighting from a car, said injury being caused by a premature starting of the car on a signal given by another passenger, it appearing that the conductor, though on the platform, was counting transfers and paying attention to nothing else, and that passengers had given the signal before on that trip. To a like effect is the case of Nichols v. Railway, 168 Mass. 528, 47 N. E. 427.

[5, 6] Plaintiff's third assignment is directed to the admission over objection of certain testimony of the witness W. F. Carr, to the effect that he rode back and forth on the street car line from Avenue K (near where the accident occurred) to the factory, and saw a box on several different occasions, and that sometimes he used the box for the purpose of boarding or alighting from the car; that he had used the box two days before he heard of the accident to Mrs. Berry; that the box that he used and saw was low on one side and shaky, and looked—

"like one of these meat boxes turned upside down, * * * it looked like an old soft bacon box about 8 or 10 inches deep and about 18 inches wide and about 2 feet long. It appeared to be weak. I saw this box about two days before I heard of the plaintiff's injury. I do not know whether this was the same box that plaintiff used when she was injured or not. I never saw but one box there, and it was either this box or one similar to it. They were thrown on the right-hand side going to the factory."

The objection was made to all of this testimony on the ground that it did not show with any degree of conclusiveness that the box seen by the witness was the same box as used by Mrs. Berry, and because the evidence was immaterial, irrelevant, and hearsay, "and because the negligence of the witness in the use of said box could not be attributed to the street car company and could not bind it in any way." Certainly, a portion of this testimony is not subject to the vice of being hearsay, or to any of the other objections made; and the objections going to the whole would be ineffectual to reach any por-

tion of said testimony to which they might be pertinent. But we are of the opinion that the testimony was admissible and not subject to the objection of being hearsay. The fact that the witness had learned of the accident from his wife, and that thereby he had fixed the date of the accident to Mrs. Berry with reference to the time he saw a box, and the only box on the side of the street and in the block where he lived or boarded the car, would not make such testimony hearsay. A witness may date a fact which he knows by relating it to the time when he heard another fact; and, in so doing, he may state what the fact heard was, in order to let the jury see what reason he had for observing and remembering the fact about which he testifies from personal knowledge. Harris v. Cent. R. Co., 78 Ga. 525, 3 S. E. 355; Wigmore on Evidence, vol. 1, §§ 655 and 730; vol. 2, Wigmore on Evidence, § 1791; 1 Thompson on Trials, § 374.

Or differently stated, for the purpose of identifying the time of facts about which he testified, with reference to some other fact, and when no issue is involved as to the date of the other fact, a witness may state that he heard of the other fact, and that the matters about which he testifies of his own personal knowledge occurred before or subsequent thereto.

[7] This witness testified, further, that, for several days prior to the time Mrs. Berry fell:

"I saw a box there and used it myself several times; I rode back and forth a good deal to my work."

We think it was for the jury to decide whether or not the box about which the witness Carr testified was the same box used at the time of Mrs. Berry's fall, and that the objection that it was not shown with any degree of conclusiveness that the two boxes were the same goes rather to the weight than to the admissibility of the testimony. In the case of Ry. v. Dunbar, supra, it was held that, where a passenger was injured by the upsetting of a step box placed on a rough pavement as a means of alighting, he might testify that step boxes used at the station had upset on other occasions when passengers stepped on them. Railway v. Evansich, 63 Tex. 54; Railway v. Richards, 49 S. W. 687. Therefore, this assignment will be overruled, and likewise the fourth, which urges the insufficiency of the evidence to sustain the finding of the jury to the effect that the defendant and its employés were guilty of negligence in allowing the box mentioned to be placed alongside of its street car track, and to be used by plaintiff to step on while alighting from the car.

[8] The fifth assignment urges the excessiveness of the verdict and judgment for $1,-125. Mrs. Berry, the plaintiff, testified:

"When I got to my daughter's, I went to bed pretty soon, in just a little while; I stayed there a little while. I ate my breakfast. Well,

I sat in a rocking chair a little while until my limb was swelling so I had to have a doctor, and they summoned one. For a good while, they packed ice on my limb. I was in bed two weeks, if not several days over. I could not swear how many days over two weeks. I suffered during that time with my left limb and with my back. I suffered with the lower part of my back, and those ligaments here were torn loose, and my knee and my hip in the joints—in the joints of my knee and hip, and those ligaments. They kept ice on my knee the first night and day, all night and part of the next day, before they could put liniment on it. It swelled up very much indeed. I am still affected in my knee, in walking out straight it pains—in walking out straight any distance. * * * I cannot step down on anything too low on account of my knee. I cannot bend it back this way very much. It is weak and I suffer from it; there is great pain when I bend it clear back. * * * I still suffer with my back; it is weak; I have not any strength in it much. I am not able to do my household duties and do my work like I used to do. There is a whole lot of difference. My limb, when I do very much work, or walk just a little piece, I suffer with it then at night; there is a weakness all the time in my back, and in my knee and those ligaments. I suffer with them all the time, and now, just the going up those steps and the little walking I have been doing this evening, I feel it yet. It is not so much about my hips; my back was hurt there, got such a wrench, it just threw me this way and my weight fell to my left side, and those ligaments in here, that is the torn part."

It was further shown that Mrs. Berry was some 40 years of age at the time of the accident, and prior thereto had done the cooking and household work for six people. It is true that on cross-examination it was developed that for some years before her injury she had suffered from ill health and was at times incapacitated for work, but she testified that for the two years immediately preceding the accident she had been entirely well and strong, and this testimony seems to be uncontradicted. Dr. Lee, the physician who was called in to treat plaintiff, testified that he made three visits to see her, on Sunday, Monday and Tuesday following the accident, and that on his first visit he found plaintiff complaining of pain in her knee and that the knee was sprained or swollen, but there were no contusions, bruises, or abrasions; that he put her knee in adhesive plaster to keep her from moving it, and ordered an ice pack used on it. That he gave her a hypodermic the first night to relieve pain; that subsequent to his last visit plaintiff's daughter called him up and reported that her mother was getting along very well, and that she did not think it was necessary for him to see her any more. That at the time of his last visit the knee was not fully well. That the swelling was there for three or four inches in a contusion of the joints; that a sprain is really a contusion of the joints; that is, a strain of the ligaments. That falling from the step of a street car and careening to one side might produce an injury like plaintiff had. Dr. Lee testified that plaintiff made no complaint to him of any other injury than that to the knee. We

conclude that this assignment must be overruled.

[9] Appellant's sixth and last assignment complains of the alleged misconduct of the jury while deliberating on their verdict, in the following particulars: That some of the members of said jury, being on the jury for the week, had two days before been in the courtroom and heard the trial of another case against the defendant in this case, and that the attorney representing the plaintiff in the first case also represented the plaintiffs in the instant case. That evidence was introduced in the first case tending to show, and the charge was made that the counsel for plaintiff was feigning injury, and that the statement was made during the progress of said first trial; and, in the course of the proceedings which resulted therefrom, it was testified that the counsel for plaintiff had stated that Mrs. Berry, who was his client in the instant case, was not hurt. It is urged and was shown that, during the course of the jury's deliberations, some of them discussed the facts and features developed and disclosed during the trial and subsequent proceedings hereinabove mentioned, and that one juror, at least, stated that he did not believe defendant had treated plaintiff's counsel right in this other trial, and that another juror stated that it did not make any difference what verdict they would render, that the traction company could get a new trial by appealing, and that another juror stated that he thought the traction company had framed up this first case in order to make the jury believe that Mrs. Berry was not hurt.

Several of the jurors were examined in the investigation had by the court on the motion for a new trial, and all of them testified that each time any of the matters referred to were mentioned by any juror that the foreman cautioned them against discussing any such matter or considering it, and each juror testified that nothing that occurred, during the deliberations, of the character mentioned influenced him in the least, in rendering the verdict that was finally rendered; that he agreed to said verdict rendered because in his opinion it reached the truth and justice.

We do not believe that any prejudice to defendant's rights has been shown. It was held by this court in the case of G., C. & S. F. Ry. Co. v. McKinnell, 173 S. W. 937, that a jury who, while deliberating on a verdict, discussed the proposition that plaintiff would be required to pay a large sum to his attorneys for services rendered, and it appearing that by reason thereof a larger verdict was rendered than otherwise would have been rendered, were guilty of misconduct necessitating the setting aside of the verdict. This holding was based on the affidavit of one of the jurors that such discussion was had and that he was influenced thereby to agree to

a verdict in a considerably larger amount than he would otherwise have been willing to agree to. In the case of W. U. Tel. Co. v. Tweed, 138 S. W. 1155, the Court of Appeals for the Dallas District, while reversing the judgment on other grounds, commented on the fact that the evidence adduced on the hearing of the motion for new trial showed that the jurors were influenced by, and resented what they believed to be, the action of the defendant company in employing a detective to watch the jury pending a trial, with a view of detecting any misconduct on their part, and to see that their verdict was not affected by any undue or improper influence brought to bear upon them, and that probably the jury were influenced to award a larger sum in damages than it otherwise would had it not been for this feeling of resentment. But as in the instant case the jury was selected with a knowledge on the part of both parties litigant and their counsel that the members of the panel, or at least some of them, had been present in the courtroom when the transactions and proceedings alleged to have been discussed by the jury during their deliberations occurred, and since appellant and its counsel accepted these jurors, knowing this fact, and since upon the investigation each juror testified that none of the happenings of which complaint is made influenced him in the least in reaching the verdict rendered, we conclude that no reversible error is shown in this assignment, and it is, therefore, overruled.

Judgment affirmed.

### On Rehearing.

[10, 11] In its motion for rehearing appellant calls our attention to the fact that appellee in her pleadings failed to allege negligence on the part of appellant and its employés, in failing to know or discover that the box had been placed beneath the step where appellee alighted from the car, and therefore that we were not justified in using the following language in our original opinion, to wit:

"Appellant predicates its contention that it was not negligent principally upon the asserted ground that the conductor of the car in question did not know that the box upon which Mrs. Berry alighted was there, and did not know of its unsafe and unstable condition; but we are of the opinion that the evidence is sufficient to sustain the finding of the jury that the conductor did know, or should have known in the exercise of that high degree of care due a passenger, that said box had been placed near the track and immediately under and in front of the step prior to Mrs. Berry's stepping thereon, and that the box was not safe for the purposes and uses to which it was put."

But the jury found, in answer to Special Issue No. 1, that the defendant company and its agents (including the conductor) did know that the box had been so placed. While the conductor testified that he did not know that the box had been so placed, we conclude, from the evidence quoted in the original opinion, that the jury were justified in finding as they did. The conductor was on the rear platform when Mrs. Davis boarded the car, she using the box as she got on; and he testified that he assisted her in getting on, and there being nothing to prevent the conductor from seeing Denton as he got the box and placed it for Mrs. Davis to use. While there is no positive and direct evidence that the conductor saw the box so placed, the circumstances shown are sufficient to sustain the finding of the jury upon this issue. A jury is not required to believe a witness, although he makes a plain statement of what is not impossible, and is neither impeached nor contradicted by direct evidence, but may discredit him on account of the manner of testifying and the attendant circumstances. G., H. & S. A. Ry. Co. v. Murray, 99 S. W. 144, and cases there cited. We withdraw, as inappropriate in the connection used, so much of our language, quoted above, as reads as follows, "or should have known in the exercise of that high degree of care due a passenger," but otherwise we adhere to the conclusion stated.

Counsel for appellant seems to fail to understand the application of the language used in our original opinion in discussing the assignment directed to the admission of the testimony of W. F. Carr, for, in this motion, he says:

"Appellant does not dispute the correctness of the language of the court in stating that if the purpose of this testimony had been to fix the date of the accident to Mrs. Berry, or to fix the date when he heard some other fact, or to impress the jury with his capacity for remembering certain facts about which he testifies, that it would not be open to the objection urged by appellant that it was hearsay," etc.

It is true that Carr's desired testimony was not directly upon the accident to Mrs. Berry, but rather to show that, at or about the time and prior to said accident, he, Carr, had seen a box at the side of the street near the track, and that said box had been used frequently by passengers in boarding and alighting from the car. He could not be permitted to testify that it was the same box involved in this controversy, but he could describe the location of the box, the kind of box it was, and the time he saw it, and it was for the jury to determine whether or not it was the same box as used at the time of the accident to Mrs. Berry. In order to fix the time when he saw the box with reference to Mrs. Berry's accident, the date of which was not in dispute, we held that he could testify that he had been informed by his wife of Mrs. Berry's accident.

As to other matters urged in appellant's motion, we think they have been sufficiently discussed in the original opinion.

The motion for rehearing is overruled.